LAY, Chief Judge.
Briggs Transportation Company (Briggs), the debtor in this bankruptcy action, appeals from an order of the district court[1] reversing the bankruptcy court.[2] The issue before us is whether the concept of “adequate protection” found in 11 U.S.C. §§ 361 and 362 (West Supp.1985) entitles undersecured creditors as a matter of law to interest payments from a debtor to compensate the creditors for lost opportunity costs due to the delay in reinvesting the collateral’s liquidated value caused by an automatic stay. We reverse, holding that such interest payments are permissible but not required to provide adequate protection, and remand to the bankruptcy court for additional findings.
Background
In January 1983, Briggs filed a voluntary petition under Chapter 11 of the Bankrupt *1341 cy Code. At that time General Motors Acceptance Corporation (GMAC) held a valid perfected security interest in fifty tandem-axle tractors purchased by Briggs. Lend Lease, a division of National Car Rental System, Inc. (Lend Lease),, held a valid perfected security interest in 100 trailers under a secured lease/purchase agreement with Briggs. Both GMAC and Lend Lease were undersecured, and Briggs claimed no equity in the collateral. GMAC and Lend Lease were prevented from foreclosing on their collateral by 11 U.S.C. § 362(a)’s[3] automatic stay.
GMAC and Lend Lease petitioned the bankruptcy court under 11 U.S.C. § 362(d)(1)[4] for relief from the stay and permission to foreclose. The parties subsequently stipulated that Briggs could retain the collateral in exchange, inter alia, for monthly cash payments to compensate the creditors for the equipment’s depreciation as a component of adequate protection. GMAC and Lend Lease also sought adequate protection in the form of interest payments to compensate for their “lost opportunity costs.” The creditors’ claims for lost opportunity costs are premised on their inability under the automatic stay to immediately foreclose, liquidate the collateral, and reinvest the liquidation proceeds. Briggs opposed the creditors’ claims for interest and the issue was submitted to the bankruptcy court. The bankruptcy court found as a matter of law that adequate protection precludes a debtor from being required to pay opportunity costs caused by the automatic stay. See In re Briggs Transportation Co., 35 B.R. 210, 216-7 (Bankr.D.Minn.1983). The creditors appealed and the district court reversed. Interpreting the Ninth Circuit’s adequate protection analysis in In re American Mariner Industries, Inc., 734 F.2d 426 (9th Cir.1984) (.American Mariner), which was filed after the bankruptcy court’s decision, the district court concluded that the undersecured creditors were entitled to interest payments as a matter of law to compensate for the delay in enforcing their foreclosure rights. Briggs appeals.
Discussion
As we noted recently in In re Martin, 761 F.2d 472 (8th Cir.1985), adequate pro *1342 tection determinations present a question of fact for the bankruptcy court, and are subject to the clearly erroneous standard of review. Martin, 761 F.2d at 474; see Bankr.R. 7052. However, the issue now before us is a question of law as to what creditor interests are incorporated in the scope of adequate protection and is thus subject to de novo review. See Martin, 761 F.2d at 474-75; In re Comer, 723 F.2d 737, 739 (9th Cir.1984).
The focus of GMAC’s and Lend Lease’s argument on appeal, similar to the creditor’s position before the Ninth Circuit in American Mariner, is not how to provide adequate protection here but what aggregation of creditor interests are entitled to protection when a bankruptcy court has determined that an automatic stay should be retained rather than lifted. The creditors argue that although periodic cash payments by Briggs may protect them against decline in the collateral’s recoverable value due to the debtor’s continued use and possession of that collateral, those payments do not compensate the creditors for the “benefit of their bargain” and do not leave the creditors adequately protected as required by 11 U.S.C. § 362. Briggs contends that adequate protection focuses on the value of the collateral itself, not the whole economic bargain of the credit agreement.
We turn first to the creditors’ constitutional challenge. Lend Lease argues that section 362(a)’s impairment of the right to foreclose constitutes a “taking” and that the Fifth Amendment requires fair compensation, relying on Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935), which held the Bankruptcy Act of 1934, also known as the Frazier-Lemke Act, unconstitutional. However, the FrazierLemke Act in the context of farm mortgages essentially “compelled the mortgagee to relinquish the property to the mortgagor free of the lien,” Radford, 295 U.S. at 599, 55 S.Ct. at 867, thus permanently transforming the parties’ rights regarding the property. The bankruptcy code’s automatic stay, however, causes only a temporary delay of a creditor’s right to enforce its lien on the collateral. In Continental Illinois National Bank & Trust v. Chicago, Rock Island & Pacific Railway Co., 294 U.S. 648, 55 S.Ct. 595, 79 L.Ed. 1110 (1935), the Supreme Court held that suspension of the right to enforce a lien is within Congress’s constitutional bankruptcy powers. See Continental Illinois, 294 U.S. at 675, 55 S.Ct. at 605. Section 362(a)’s temporary stay is thus not a taking of the creditors’ substantive rights in specific property acquired before the petition’s filing as was true in Radford. See Radford, 295 U.S. at 590, 55 S.Ct. at 863.
In the bankruptcy context, adequate protection is a safeguard which is provided to protect the rights of secured creditors, throughout the proceedings, to the extent of the value of their property, and there is no constitutional claim of the creditor to more than thal. Wright v. Union Central Life Insurance Co., 311 U.S. 273, 278, 61 S.Ct. 196, 199, 85 L.Ed. 184 (1940). By providing a creditor with a means of protecting its interest through section 362(d)’s adequate protection requirement, the competing interests of the debtor’s need to reorganize and the secured creditor’s entitlement to constitutional protection of its bargained-for property interests are reconciled. See, e.g., In re Jug End in the Berkshires, Inc., 46 B.R. 892, 898-99 (Bankr.D.Mass.1985). See also First Bank of Miller, Miller, S.D. v. Wieseler, 45 B.R. 871, 874 n. 1 (D.S.D.1985) (citing Louisville Joint Stock Land Bank v. Radford, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935); S.Rep. No. 989, 95th Cong., 2d Sess. 49 (1978), reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 5835); Matter of Alexander, 48 B.R. 110, 114-18 (Bankr.W.D.Mo. 1985). In a constitutional sense, this temporary suspension of lien enforcement breaches no essential property interest of the creditor and is not an unlawful taking under the Fifth Amendment.
We turn now to the undersecured creditors’ characterization of section 362’s automatic stay as an “extraordinary remedy.” *1343 Rather, as the report of the Senate Judiciary Committee states, “[t]he automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws.” S.Rep. No. 989 at 54, 1978 U.S.Code Cong. & Ad.News at 5840. It is automatic upon a petition’s filing and may last at least thirty days without affording creditors any protection. 11 U.S.C. section 362(e). Further, a secured creditor may avoid incurring substantial economic penalties due to undue delay in access to its assets by requesting relief from an automatic stay for cause, including the lack of adequate protection of the creditor’s interest in the property. 11 U.S.C. § 362(d).
Essential to any analysis of the meaning of and policy behind any section of the bankruptcy code is the recognition that a bankruptcy court is a court of equity. Bankruptcy courts do not read statutory words with a computer’s ease, but operate under the overriding consideration that equitable principles govern the exercise of bankruptcy jurisdiction. In re Williams, 7 B.R. 234, 236 (Bankr.M.D.Ga. 1980), (quoting Bank of Marin v. England, 385 U.S. 99, 103, 87 S.Ct. 274, 277, 17 L.Ed.2d 197 (1966)). As we noted in Martin:
Under Chapter 11, the purposes of business reorganization are to “relieve the debtor of its prepetition debts, to free cash flow to meet current operating expenses, and ultimately to permit the debtor ‘to restructure a business’s finances so that it may continue to operate, provide its employees with jobs, pay its creditors, and produce a return for its stockholders.’ ” American Mariner, 734 F.2d at 431 (quoting H.R.Rep. No. 595 at 220, 1978 U.S.Code Cong. & Ad. News at 6179). The filing of a Chapter 11 petition operates as an automatic stay, which prevents creditors from enforcing their liens against the property of the bankruptcy estate and removing collateral that may be essential to the reorganization plan. 11 U.S.C. § 362(a).
Martin, 761 F.2d at 475. The automatic stay is clearly designed to afford a debtor a “breathing spell” free from actions by creditors against the petitioner’s estate. In re Mellor, 734 F.2d 1396, 1399 (9th Cir.1984). The stay also shields creditors from each other and is intended to aid in equitably distributing the debtor’s assets in a way that maximizes the interests of all parties. It is interim protection for secured creditors and “designed not as a purgative of all creditor ailments but as a palliative of the worst: reorganization, dismissal or liquidation will provide the final relief.” In re Alyucan Interstate Corp., 12 B.R. 803, 806 (Bankr.D.Utah 1981).
In Yamaha Motor Corp. U.S.A. v. Shad-co, Inc., 762 F.2d 668 (8th Cir.1985), this court recognized that courts are divided on the issue whether compensation for post-petition interest is within the proper scope of adequate protection during an automatic stay. See Yamaha, 762 F.2d at 670. A number of bankruptcy courts have declined to extend adequate protection to require interest payments compensating for lost reinvestment costs.[5] The Ninth Circuit concluded, however, in American Mariner that adequate protection under section 362(d)(1) requires interest payments as a component of the secured collateral’s underlying value, In re American Mariner Industries, Inc., 734 F.2d 426, 435 (9th Cir.1984), reversing a decision of the bankruptcy court initially affirmed by a bankruptcy appellate panel. See In re American Mariner Industries, Inc., 10 B.R. 711 (Bankr.C.D.Cal.1981), aff’d, 27 B.R. 1004 (Bankr. 9th Cir.1983). The Ninth Circuit’s *1344 approach has been followed by other courts,[6] including the Fourth Circuit in Grundy National Bank v. Tandem Mining Gory., 754 F.2d 1436 (4th Cir.1985) (adopting American Mariner analysis without extensive discussion of relevant statutory language or legislative history). Although agreeing that the creditors’ arguments have some appeal from a strictly economic perspective, the bankruptcy court in the case at bar relied on the adequate protection analysis by the bankruptcy appellate panel in In re American Mariner Industries, Inc., 27 B.R. 1004 (Bankr. 9th Cir.1983), and by the bankruptcy court in In re South Village, Inc., 25 B.R. 987 (Bankr.D.Utah 1982). See In re Briggs, 35 B.R. at 212-14. However, the district court’s review of the bankruptcy court’s decision followed the Ninth Circuit’s analysis in American Mariner, which reversed the decisions discussed in the bankruptcy court’s opinion.
Since adequate protection is nowhere explicitly defined in the Bankruptcy Code, inferences drawn from the legislative history become important in sorting out exactly what Congress intended should constitute adequate protection in the context of an automatic stay. Many courts before us have developed cogent arguments and mar-shalled ample supporting evidence in favor of both granting and denying post-petition interest to secured creditors as a component of adequate protection. Compare, e.g., American Mariner, 734 F.2d 426 (9th Cir.1984) and In re Monroe Park, 17 B.R. 934 (D.Del.1982) (granting creditors post-petition interest for claimed opportunity costs) with In re Saypol, 31 B.R. 796 (Bankr.S.D.N.Y.1983) and In re South Village, Inc., 25 B.R. 987 (Bankr.D.Utah 1982); (denying creditors post-petition interest for claimed opportunity costs).
Despite the disagreement among courts as to the propriety of post-petition interest in the adequate protection context, it is generally acknowledged that, as demonstrated by the non-exclusive examples of section 361,[7] adequate protection is the protection of a secured creditor’s “interest in property” from any decrease in “value” atrributable to the stay. See, e.g., In re South Village, 25 B.R. at 989. It also is generally accepted that the concept requires the debtor to propose some form of relief that will preserve a secured creditor’s interest in the collateral. See, e.g., In re Harrington & Richardson, Inc., 48 B.R. 431, 433 (Bankr.D.Mass.1985) (quoting In re Monroe Park, 17 B.R. at 937; 2 Collier on Bankruptcy 11 361.01 at 361-5). The creditors here argue that section 361’s references to an “interest in property” and “value” are intended to encompass the whole of their economic bargain with the debtor to insure that they receive the equivalent of what they would have received had there been no bankruptcy action filed. An examination of section 361’s legislative history shows, however, that Congress broadly intended that “the interests of which the court may provide protection *1345 in the ways described in this section [361] include equitable as well as legal interests.” H.R.Rep. No. 595, 95th Cong., 2d Sess. 338 (1978), reprinted in 1978 U.S. Code Cong. & Ad.News 5963, 6295. Sections 361(1) and 361(2) specifically provide protection for a decrease in the value of the creditor’s interest in such property through section 361(l)’s periodic payments to compensate for depreciation and section 361(2)’s additional or replacement lien to the extent of the decrease in value or actual consumption of the property involved. See S.Rep. No. 598 at 54, 1978 U.S.Code Cong. & Ad.News at 5840. Sections 361(1) and 361(2) are drafted to address the collateral’s depreciation or decline in value during the pendency of the stay. These provisions are coupled with the grant of other relief as will result in realizing the indubitable equivalent of the creditor’s interest on which the creditors focus here. See 11 U.S.C.A. § 361(3). This statutory scheme indicates that adequate protection is intended to encompass a broad range of creditor interests and does not mandate an interpretation of the creditors’ interest as the whole of the economic bargain.
At the heart of this search for a way to adequately protect the creditors’ interest in the collateral is the question of what factors constitute the value of that interest. GMAC and Lend Lease argue here that “value” refers to “cash value,” that they are entitled to the “benefit of their bargain,” and that resort to the collateral is an essential component of that bargain struck between borrowers and lenders. A narrowly calibrated conception of adequate protection, however, subject to brittle construction, cannot accommodate the “infinite number of variations possible in dealings between debtors and creditors.” In re Al-yucan, 12 B.R. at 805 (quoting H.R.Rep. No. 595 at 339, 1978 U.S.Code Cong. & Admin.News at 6295). Although the concept of adequate protection is certainly intended to protect a creditor’s interest in the collateral, it is clearly susceptible to differing applications over a wide range of fact situations. As the Ninth Circuit noted in this regard, the House Report states that adequate protection
is not intended to be confined strictly to the constitutional protection required, however. The section, and the concept of adequate protection, is based as much on policy grounds as on constitutional grounds. Secured creditors should not be deprived of the benefit of their bargain. There may be situations in bankruptcy where giving a secured creditor an absolute right to his bargain may be impossible or seriously detrimental to the bankruptcy laws. Thus, this section recognizes the availability of alternate means of protecting a secured creditor’s interests. Though the creditor might not receive his bargain in kind, the purpose of the section is to insure that the secured creditor receives in value essentially what he bargained for.
American Mariner, 734 F.2d at 431 (quoting H.R.Rep. No. 595 at 339, 1978 U.S.Code Cong. & Ad.News at 6295) (emphasis added). The Ninth Circuit further noted in American Mariner, in interpreting the scope of section 361’s emphasis on the “value of the protected entity’s interest in the property involved,” that:
The section [361] does not specify how value is to be determined nor does it specify when it is to be determined. These matters are left to case-by-case interpretation and development. It is expected that the courts will apply the concept in light of facts of each case and general equitable principles.
Id. (emphasis added). The legislative history also notes that the use in section 361(1) of periodic cash payments to compensate for expected decreases in the value of the creditors’ interest in property may be especially appropriate for adequate protection purposes where, as here, the property in question is depreciating at a relatively fixed rate. S.Rep. No. 989 at 54, 1978 U.S.Code Cong. & Ad.News at 5840 (construing In re Bermec Corp., 445 F.2d 367 (2d Cir.1971)). In Bermec, the court approved construing debtor payments of “economic depreciation” on the secured creditor’s equipment so as to approximately pre *1346 serve the status quo. See Bermec, 445 F.2d at 369. The Bermec court also noted:
We are conscious of the deep concern of the manufacturing secured creditors lest their security depreciate beyond adequate salvage, but we must balance that with the Congressional mandate to encourage attempts at corporate reorganization where there is a reasonable possibility of success.
Bermec, 445 F.2d at 369. We can only infer from this express reference to Ber-mec in the legislative history that Congress was aware both of Bermec’s emphasis on the need to balance the equities in each particular case and of Bermec’s recognition that creditors may at times be unable to obtain compensation for their interests in collateral above the lien or salvage value of that property.
GMAC and Lend Lease invoke section 361(3) as entitling them to compensation for opportunity costs as the “indubitable equivalent” of their foreclosure interest and cite legislative history stating that “[s]ecured creditors should not be deprived of the benefit of their bargain.” H.R.Rep. No. 595 at 339, 1978 U.S.Code Cong. & Ad.News at 6295. However, “indubitable equivalent” simply describes what would constitute adequate protection. It does not define the interest to be protected. As the creditors have noted, the phrase was coined by Judge Learned Hand in In re Murel Holding Corp., 75 F.2d 941, 942 (2d Cir.1935). However, Murel dealt with confirmation of a plan opposed by creditors, rather than the temporary interim protection of an automatic stay. In describing the meaning of “adequate protection” for purposes of a plan’s confirmation under the Bankruptcy Act of 1889, Judge Hand stated:
It is plain that “adequate protection” must be completely compensatory; and that payment ten years hence is not generally the equivalent of payment now. Interest is indeed the common measure of the difference, but a creditor who fears the safety of his principal will scarcely be content with that; he wishes to get his money or at least the property. We see no reason to suppose that the statute was intended to deprive him of that in the interest of junior holders, unless by a substitute of the most indubitable equivalance.
Murel, 75 F.2d at 942. “Indubitable equivalence,” the language on which the creditors here rely for compensation of their claimed lost opportunity costs, was designed to broaden, not circumscribe, the range of solutions available to debtors and creditors in determining what interests in a particular case are to be adequately protected. See In Re Shriver, 33 B.R. 176, 184 (Bankr.N.D.Ohio 1983).
As this court noted in Martin, inclusion of the “indubitable equivalent” concept in the context of an interim automatic stay was the result of a legislative compromise. Martin, 761 F.2d at 476. This legislative history indicates that Congress did intend that a bankruptcy court, in reviewing a debtor’s proposed means of adequately protecting a secured creditors interest, should as nearly as possible under the circumstances provide the creditor with his bargained-for rights. See American Mariner, 734 F.2d at 435. However, in determining the exact scope of those bargained-for rights, the boundaries of the indubitable equivalence standard cannot be so rigidly defined as to mandate interest payments for the delay in foreclosing, liquidating, and reinvesting the collateral in every case. Rather, indubitable equivalence must be construed as an alternative means of calculating value in light of a particular case’s facts. In re Colrud, 45 B.R. 169, 175 (Bankr.D.Alaska 1984). The bankruptcy code’s design, the legislative compromises from which the statute was constructed, and the developing case law all indicate that the creditor rights to be afforded adequate protection in a given situation depend on a variety of factors the exact character of which will vary from case to case and may, but will not always, include the payment of interest for opportunity costs.
Contrary to GMAC and Lend Lease’s contention, creditors have no right to be placed in the same economic position *1347 as if there had been no bankruptcy filing. Congress has observed “[t]here may be situations in bankruptcy where giving a secured creditor an absolute right to his bargain may be impossible or seriously detrimental to the policy of the bankruptcy laws.” S.Rep. No. 989 at 53, 1978 U.S. Code Cong. & Ad.News at 5839. Bankruptcy involves a balancing of interests between the debtor and creditors. The effect of the bankruptcy laws is to alter or eliminate a debtor’s obligations to its creditors upon the advent of the debtor’s inability to meet those obligations. These changes are imposed as a matter of law and leave creditors in a very different economic position than before the debtor filed for bankruptcy. A creditor’s interest in the collateral is tied to possible default by the debtor and, like any contractual agreement, is always subject to existing federal law, including the automatic stay provisions under section 362(a). The essence of a creditor’s interest in the collateral is not necessarily foreclosure and reinvestment, but may be the guarantee that, as a secured creditor, it will be paid in full up to the lien value of the collateral. Unsecured creditors often get back little or nothing of what is owed to them despite their original bargain with the debtor for full repayment.
Contrary to the bankruptcy judge’s views, our analysis here is not affected by apparent conflicts with language in sections 502 and 506 of the Bankruptcy Code, which disallow secured claims for unma-tured post-petition interest. Oversecured creditors are allowed under section 506(b) of the Bankruptcy Code to claim interest, but only to the extent that they are overse-cured. This provision constitutes an exception to section 502(b)(2), which specifically disallows claims for unmatured interest. We adopt the view advanced in the bankruptcy court’s American Mariner opinion, although later rejected by the Ninth Circuit, that section 502(b)(2) does not serve by negative implication to bar payment of interest to undersecured creditors.[8] In re American Mariner Industries, Inc., 27 B.R. at 1009. Section 506(b) simply provides an alternative to the adequate protection provisions in sections 361 and 362 and does not serve as a limitation thereon. We also find that section 502(b)(2), which disallows claims for unmatured interest, does not preclude payment of interest as time value compensation to secured creditors.[9] In resolving this apparent conflict in the statutory language, it is imperative to recognize
that section 506(b) provides only for the allowance of postpetition interest, fees, costs and charges as part of a secured claim. It does not require the current payment of such amounts. Entitlement to current payment of such amounts must be grounded elsewhere, such as in the provision of adequate protection or in underlying agreements which are not affected by the subject bankruptcy case.
3 Collier on Bankruptcy 11506.05 at 506-40 (emphasis and footnotes omitted).
GMAC argues that bankruptcy courts were not intended to have broad discretion to determine what constitutes adequate protection in a given case, urging that such discretion will lead to “anomalous results” and increase the cost of secured credit. However, the legislative history indicates that Congress has repeatedly expressed its desire to give bankruptcy courts broad discretion. See S.Rep. No. 989 at 54, 1978 U.S.Code Cong. & Ad.News at 5840; H.R. Rep. No. 595 at 338-40, 1978 U.S.Code Cong. & Ad.News at 6295-97. By incorporating flexibility into the code, Congress plainly intended adequate protection issues to be resolved on a case-by-case basis and expected anomalous results. See Martin, 761 F.2d at 476.
*1348 Influenced by the clearly articulated policy in the statutory language, legislative history and relevant case law, we believe bankruptcy courts should retain a high degree of flexibility in arriving at adequate protection findings. This court is convinced that the most reasonable approach accommodating the greatest number of interests is to refrain from shaping a rigid rule that compensation for post-petition interest either must or cannot be required as a component of adequate protection in the context of an automatic stay. We also believe that this approach is entirely consistent with the Ninth Circuit’s conclusion in American Mariner that interest payments were proper there to afford the creditor in that case adequate protection of its interest in the collateral. As the Ninth Circuit noted:
In this case we are engaged in precisely the sort of case-by-case interpretation and development intended by Congress.
We recognize that a congressional directive for “case-by-case interpretation and development” must not be abused. Such judicial interpretation must not overlook the overriding purpose of the automatic stay, namely to give the debt- or “a breathing spell from his creditors ... [to permit] the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.” H.R.Rep. No. 595 at 340, 1978 U.S.Code Cong. & Ad.News at 6296-97. Nor can we ignore the purposes of business reorganization under Chapter 11 to initially relieve the debtor of its prepetition debts, to free cash flow to meet current operating expenses, and ultimately to permit the debtor “to restructure a business’s finances so that it may continue to operate, provide its employees with jobs, pay its creditors, and produce a return for its stockholders.” Id. at 220, 1978 U.S.Code Cong. & Ad.News at 6179.
American Mariner, 734 F.2d at 431.
Courts both before and after the Ninth Circuit’s decision in American Mariner have adopted explicitly or implicitly a case-by-case approach even while extending the scope of adequate protection to compensate a secured creditor for post-petition interest. They repeatedly recognize that adequate protection is a flexible concept which requires a court to make decisions on a case-by-case basis, after full consideration of the particular characteristics of each proceeding to the extent that “compensation for unpaid accruing interest charges during the pendency of the bankruptcy proceedings is not necessary in all cases.” In re Monroe Park, 17 B.R. at 940 (quoting In re BBT, 11 B.R. 224, 232 (Bankr.D.Nev.1981)); In re Mary Hartley Builder, Inc., 44 B.R. at 156; see also First Bank of Miller, 45 B.R. at 875 (value of creditor’s bargain should be determined on a case-by-case basis, in light of equitable principles and the facts of the case, citing American Mariner ); In re Sun Valley Ranches, Inc., 43 B.R. 641, 644 (Bankr.D.Idaho 1984) (“American Mariner does not require that adequate protection take the form of cash payments; that is simply one option available to the debtor.” (emphasis in text)).
Flexibility was legislated into the Bankruptcy Code by the very fact that the term “adequate protection” resists precise definition.[10] This reflects congressional recognition that myriad factors are taken *1349 into account by the parties in entering into a security agreement and a wide spectrum of circumstances may exist at the time a debtor files a petition. Even in Murel, Judge Hand’s indubitable equivalence language grew out of the court’s cognizance of that case’s particular facts, including its conclusion that the proposed plan had little chance of success and that the ability of the debtor’s income-producing asset, an apartment building, to satisfy accruing claims against the debtor was declining. See Murel, 75 F.2d at 942. Although the court’s encouragement of reorganization must not operate to the detriment of a secured creditor’s interests, final reconstruction of the creditor’s bargain to determine just what interests of the creditor should be afforded protection during the pendency of the automatic stay is a balancing act best left to the discretion of the bankruptcy judge.
Such a balancing act may, but will not always, be resolved in favor of post-petition interest payments to the creditor. Whether a debtor’s proposal does or does not include interest payments for the present value of the creditor’s foreclosure rights will depend on such factors as the nature of the collateral and the proposed use of the collateral in the interim. See Martin, 761 F.2d at 476-77; In re Smithfield Estates, Inc., 48 B.R. 910, 915 (Bankr.D.R.I. 1985); see also In re Polzin, 49 B.R. 370, 372 (Bankr.D.Minn.1985) (where debtor offered interest payments to an undersecured creditor not entitled to post-petition interest under section 506(b) as part of adequate protection, court notes that proffered interest is acceptable under reasoning in American Mariner to compensate for loss of the collateral’s use during the stay).
We recognize that a rule which directs courts to approach adequate protection analyses on a case-by-case basis provides minimal guidance for future reconstruction by courts of a secured creditor’s bargain for adequate protection purposes. However, the developing case law applying the provisions of the Bankruptcy Code of 1978 has already devised a broad variety of equitable considerations which provide a guide for future cases. Obviously, situations involving a greatly oversecured claim will be quite different from cases such as this involving undersecured claims, and a value determination for automatic stay purposes is not necessarily the same as value determined for another purpose, such as confirming a plan. See 11 U.S.C. § 506(a); see also LaJolla Mortgage Fund v. Rancho el Cajon Associates, 18 B.R. 283, 287-9 (Bankr.S.D.CalN.1982). What constitutes the bargain whose benefit should be protected on the creditor’s behalf turns on factors which reveal the parties’ reasonable expectations. This may include, but is not limited to, the quality of the collateral or the length of the stay. See, e.g., In re Nixon Machinery, 9 B.R. 316, 318 (Bankr. E.D.Tenn.1981). It may turn on whether the collateral’s lien value is demonstrated to be appreciating, depreciating or remaining relatively stable. Compare, e.g., Appeal of California Gulf Partnership, 48 B.R. 959, 965 (E.D.La.1984) with In re Shriver, 33 B.R. 176, 185-6 (Bankr.N.D. Ohio 1983). See also 2 Collier on Bankruptcy ¶ 361.01[1].
Similarly, a court might look to whether taxes and other payments designed to keep the collateral free of statutory liens are being paid or will be paid by a debtor in determining whether a secured creditor is entitled to compensation for delay in foreclosure caused by the stay. See In re Aegean Fare, Inc., 34 B.R. 965, 969-70 (Bankr.D.Mass.1983). And, while protection of lost opportunity costs for going concern values may not be required in cases with a high chance of success, liquidation values, including lost opportunity costs, might be deemed protectable where the chance of reorganization is slight. See In re C.F. Simonin’s Sons, Inc., 28 B.R. 707, 711-12 (Bankr.E.D.N.C.1983). We emphasize that our list here is not exclusive, but merely indicative^of the particular risk and reliance factors shown in the nature and history of the credit transaction which *1350 a court may take into account in making adequate protection determinations.[11]
As noted above, adequate protection determinations made by a bankruptcy court are questions of fact subject to the clearly erroneous standard of review. See Martin, 761 F.2d at 474; see also Bankr.R. 8013. Guidance as to the clearly erroneous standard’s application in the adequate protection context may be found in the Supreme Court’s recent decision, Anderson v. City of Bessemer City, N. C., — U.S.-, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). As the Fifth Circuit recently noted in the context of a bankruptcy court appeal, the Supreme Court held in Anderson that:
an appellate court must review a finding of fact under the “clearly erroneous” standard of Rule 52(a) of the Federal Rules of Civil Procedure, even when the lower court’s findings of fact “do not rest on credibility determinations, but are based instead on physical or documentary evidence or inferences from other facts.”
Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1308 (5th Cir.1985), quoting Anderson, 105 S.Ct. at 511-12 (emphasis and footnote deleted). Unless a reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed, Anderson, 105 S.Ct. at 511, a bankruptcy court’s findings regarding post-petition interest as a component of adequate protection in a particular case must stand.
We agree with the Ninth Circuit that the policies behind sections 361 and 362 permit maximum flexibility in structuring a debtor’s proposal for adequate protection. See American Mariner, 734 F.2d at 435. We do not agree with the district court’s interpretation of the Ninth Circuit’s analysis in American Mariner that in every instance in which a secured creditor is prevented from enforcing its foreclosure rights against the collateral during the pendency of the automatic stay the debtor and its unsecured creditors receive a windfall at the secured creditor’s expense.[12] See id. It is, after all, not the debtor itself but Congress that determined that creditors should be stayed from proceeding against the collateral upon the filing of a petition in bankruptcy. The result of this carefully conceived mechanism is temporary maintenance of the status quo as of the period immediately before filing, not a permanent bar to liquidation and reinvestment.
After careful consideration of the Bankruptcy Code’s language and legislative history and of underlying policy considerations, we cannot hold as a matter of law that a creditor is always entitled to compensation for the delay in enforcing its foreclosure rights during the interim period between filing of a petition and confirma *1351 tion of a plan. Although the concept of adequate protection under sections 361 and 362 requires the court to protect the creditor’s allowed secured claim by compensating for any loss of value of the collateral, what constitutes adequate protection in a particular case is a question whose resolution is best left to the knowledge and expertise of the bankruptcy court.
The order of the district court is reversed. It appears that the bankruptcy court below declined to include compensation for lost opportunity costs in the scope of the creditor interests to be protected because it considered itself precluded from such a result as a matter of law. We therefore remand to the bankruptcy court for determination of whether, in light of this opinion and under the facts of this case, the debtor’s offer of periodic payments alone adequately protects the interests of the undersecured creditors.

. The Honorable Donald D. Alsop, United States District Judge for the District of Minnesota.

. The Honorable Robert J. Kressel, United States Bankruptcy Judge for the District of Minnesota.

. 11 U.S.C. § 362(a) provides:
(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970 (15 U.S.C. 78eee(a)(3)), operates as a stay, applicable to all entities, of—
(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;
(3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;
(4) any act to create, perfect, or enforce any lien against property of the estate;
(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title;
(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;
(7) the setoff of any debt owing to the debt- or that arose before the commencement of the case under this title against any claim against the debtor; and
(8) the commencement or continuation of a proceeding before the United States Tax Court concerning the debtor.

. 11 U.S.C. § 362(d) provides:
(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
(1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or
(2) with respect to a stay of an act against property under subsection (a) of this section, if—
(A) the debtor does not have an equity in such property; and
(B) such property is not necessary to an effective reorganization.

. See, e.g., In re Smithfield Estates, Inc., 48 B.R. 910 (Bankr.D.R.1.1985) (rejecting American Mariner analysis); In re Keller, 45 B.R. 469 (Bankr.N.D.Iowa 1984); In re Rowe, 43 B.R. 157 (Bankr.E.D.Mo.1984); In re Aegean Fare, Inc., 34 B.R. 965 (Bankr.D.Mass.1983); In re Shriver, 33 B.R. 176 (Bankr.N.D.Ohio 1983); In re Cantr-up, Til B.R. 1004 (Bankr.D.Colo.1983); In re Saypol, 31 B.R. 796 (Bankr.S.D.N.Y.1983); In re South Village, Inc., 25 B.R. 987 (Bankr.D.Utah 1982); In re Pine Lake Village Apartment Co., 19 B.R. 819 (Bankr.S.D.N.Y.1982); In re Alyucan Interstate Corp., 12 B.R. 803 (Bankr.D.Utah 1981). See also, 2 Collier on Bankruptcy f 361.-01 (L. King 15th ed. 1985).

. In re Monroe Park, 17 B.R. 934 (D.Del.1982); In re Virginia Foundry Co., Inc., 9 B.R. 493 (W.D.Va.1981); In re Bear Creek MiniStorage, Inc., 49 B.R. 454 (Bankr.S.D.Tex.1985); In re Mary Harpley Builder, Inc., 44 B.R. 151 (Bankr. N.D.Ohio 1984). See also Matter of Langley, 30 B.R. 595 (Bankr.N.D.Ind.1983); Matter of Anchorage Boat Sales, Inc., 4 B.R. 635 (Bankr.E.D. N.Y.1980).

. Section 361 provides:
When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by—
(1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;
(2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity’s interest in such property; or
(3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

. See Note, Compensation for Time Value as Part of Adequate Protection During the Automatic Stay in Bankruptcy, 50 U.Chi.L.Rev. 305, 321-22 (1983). We also observe that disallowance of interest to undersecured creditors during the course of post-petition proceedings does not conflict with interest payments made pursuant to liquidation proceedings under section 726(a)(5).

. See Note, supra note 8, at 322.

. As was noted by the court in In re Colrud, 45 B.R. 169 (Bankr.D.Alaska 1984), many recent articles have analyzed the code’s approach in the context of adequate protection and automatic stays. See, e.g., Baird & Jackson, Corporate Reorganizations and the Treatment of Diverse Ownership Interests: A Comment on Adequate Protection of Secured Creditors in Bankruptcy, 51 U.Chi.L.Rev. 97 (1984); Jackson, Bankruptcy, Non-Bankruptcy Entitlements, and the Creditor’s Bargain, 91 Yale L.J. 857 (1982); Nimmer, Secured Creditors and the Automatic Stay: Variable Bargain Models of Fairness, 68 Minn.L.Rev. 1 (1983); Note, Compensation for Time Value as Part of Adequate Protection During the Automatic Stay in Bankruptcy, 50 U.Chi.L.Rev. 305 (1983). As in Colrud, these articles are cited here to illustrate that though it is agreed that secured creditors should receive adequate protection of their interest in the collateral during an automatic stay, the suggestions as to what protection is adequate are varied. Colrud, 45 B.R. at 175 n. 7.

. One proposed model for examining adequate protection issues that focuses on a range of factors in adjusting the conflicting rights of creditors and debtors to the same property is set out in Nimmer, supra note 10. Nimmer also points out that at least one court has identified other code sections as providing "non-financial antidotes for delay” which may make it unnecessary for debtors to compensate a creditor’s opportunity costs. See Nimmer, supra note 10, at 14 (quoting In re South Village, 25 B.R. at 1000-02).

. The dissent reads American Mariner to hold that an undersecured creditor is adequately protected only if interest compensating for the delay in foreclosing and liquidating the collateral is granted in every case. The "case by case” language in American Mariner is narrowly construed by the dissent to refer only to how and when interest should be paid. We reject this analysis, not on the basis that we read American Mariner differently, which we do, but because, as American Mariner acknowledged, it was the directive of Congress that "value” under § 361 must be subject to case by case interpretation and development. See American Mariner, 734 F.2d at 431. In American Mariner, the Ninth Circuit recognized that each case must turn on its own facts when it found that "the case-by-case development, guided by equitable principles as Congress envisioned, must recognize and protect the value of a creditor’s interest when, as here, that value is demonstrated to exist and is measurably threatened.” American Mariner, 734 F.2d at 432. The dissent's charge that our opinion provides no guidance to bankruptcy judges misreads our all too lengthy discussion of many of the factors involved in adequate protection determinations. See supra, at pp. 1347-49.