# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

07-6006ND
_____

Midwest Agri Development Corp.,    *
                              *

       Debtor.                   *

                                    *

Kip M. Kaler,                     *    Appeal from the United States
                                    *    Bankruptcy Court for the
       Trustee - Appellant,        *    District of North Dakota
                                    *

               v.                   *

Midwest Ag Services, Inc.,       *
                                    *

       Claimant - Appellee.       *

_____

Submitted: May 15, 2007
Filed: June 8, 2007
_____

FEDERMAN, VENTERS, and McDONALD, Bankruptcy Judges

FEDERMAN, Bankruptcy Judge

Debtor Midwest Agri Development Corp. (MAD) was an investment holding company and the parent corporation of several subsidiaries, including Midwest Ag Services, Inc. (MASI). MAD was the sole shareholder of its subsidiaries. As the holding company, MAD took out loans on behalf of the subsidiaries, paid each of their major expenses, and billed the loans and amounts to the subsidiaries at year-end. MAD also intermingled the subsidiaries' assets throughout the year. For example, if

one of the subsidiaries needed the use of a truck, and another subsidiary had one available, MAD took the truck from the second subsidiary and gave it to the first, noting the transfer on the books at the end of the year. Or, in some cases, MAD took out loans on behalf of one subsidiary, but shared the loan proceeds with others. As a result, MAD and the various subsidiaries owed each other significant amounts of money at any given time.

Most of the subsidiaries ceased operations by mid-2002. MASI was the last subsidiary operating, and closed its operations sometime in late 2002 or early 2003. MAD filed a Chapter 11 bankruptcy petition in September 2002, and converted to Chapter 7 on January 24, 2003. At that point, MAD's Trustee took steps to dissolve all of the subsidiaries, except MASI, which the MAD Trustee placed into a Chapter 7 bankruptcy proceeding on February 21, 2003. As to the subsidiaries other than MASI, the MAD Trustee liquidated their assets, resulting in net proceeds of over $274,000, which the MAD Trustee retained for the MAD estate. MASI's bankruptcy trustee filed a Proof of Claim in MAD's case on April 30, 2003. In its amended claim, MASI asserted a claim of $1,197,194.27, based on the total amount of services performed, money loaned, and money due to MASI from MAD, as well as from the other subsidiaries.

The MAD Trustee objected to MASI's claim because, in sum, although the companies' accounting records showed that MASI was owed a net amount of money by some combination of MAD and the other subsidiaries, the books did not show specifically which of those entities owed MASI any particular amount of that money. Also, the books did not show whether MASI itself owed any of those entities money. An accountant employed by the MAD and MASI trustees testified that, given the manner in which MAD and the subsidiaries kept their books over the years, there would essentially be no way to determine the individual amounts that each subsidiary owed to the others. The MAD Trustee asserted that, therefore, MASI's claim could

2

not exceed the net amount that MAD itself owed to all the subsidiaries as of January 31, 2003, which MAD's records showed to be $42,182.51.

The Court allowed MASI's claim for $894,476.02, which was the net amount owed to it by all of the entities as of January 31, 2002 (which was $951,014), less certain expenses attributable to MASI for fiscal year 2002 ($56,537.98). In allowing MASI's claim against MAD, the Bankruptcy Court held that, since MAD received the proceeds from the liquidation of those other subsidiaries, and since MASI was owed something by some combination of those subsidiaries, it would be fair and equitable to allow the entire claim against MAD. The MAD Trustee appeals.

We review findings of fact for clear error, and legal conclusions *de novo*.[1] A finding is clearly erroneous when the reviewing court is "left with the definite and firm conviction that a mistake has been committed."[2]

In cases involving significant amounts of debt between related companies, and difficult accounting questions resulting from such transfers, courts are often asked to substantively consolidate the related companies, so that creditors of all of them can make claims against the combined assets. Substantive consolidation is appropriate where the intercompany claims are impossible to determine, or where the accounting expense in doing so would be prohibitive.[3] Alternatively, piercing the corporate veil

---

[1] *First Nat'l Bank of Olathe v. Pontow (In re Pontow),* 111 F.3d 604, 609 (8th Cir. 1997); *Sholdan v. Dietz (In re Sholdan),* 108 F.3d 886, 888 (8th Cir. 1997); Fed. R. Bankr. P. 8013.

[2] *Anderson v. Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985).

[3] *See* 2 Collier on Bankruptcy ¶ 105.09[2][a], pp. 105-91 (Lawrence P. King, *et al.*, 15th ed. rev. 1999) ("Perhaps the most common group of additional elements whose presence will result in an order for substantive consolidation is poor or nonexistent record keeping of, or commingling of, separate assets

is sometimes an appropriate mechanism for reaching a subsidiary's funds in the hands of a parent when the entities' assets and liabilities are commingled.[4]  For reasons which are not clear, no party has asked the Bankruptcy Court for substantive consolidation or veil piercing here.

In any event, the Bankruptcy Court in this case held that MAD should nevertheless be responsible for the debts of the other subsidiaries to MASI because MAD was holding the proceeds from the liquidation of those subsidiaries.  However, MAD is only entitled to those proceeds – as the owner of the other subsidiaries – if it has first properly dissolved those subsidiaries.

In the Affidavit he submitted to the Bankruptcy Court in support of his objection to MASI's claim, the MAD Trustee stated that he dissolved the other

---

(particularly cash and other liquid assets) and liabilities and inter-affiliate transactions, whether by design or otherwise, that makes it prohibitively expensive or impossible to sort out the proper allocation of assets and liabilities."). *See also, e.g., In re Augie/Restivo Baking Co.*, 860 F.2d 515 (2nd Cir. 1988) (holding that substantive consolidation should be allowed (a) when the creditors dealt with separate entities as a single economic unit and did not rely on the company's separate identity, or (b) when the detangling of the intertwined companies is either impossible or costly); *In re Affiliated Foods, Inc.*, 249 B.R. 770, 779-80 (Bankr. W.D. Mo. 2000) (ordering substantive consolidation in part because "it would be extremely difficult, if not impossible, to separate the financial statements and affairs of the corporate entities").

[4] *See, e.g., Butler Machinery, Inc. v. Haugen* (*In re Haugen Constr. Servs., Inc.*), 104 B.R. 1013 (D. N.D. 1989) (concluding that sole shareholder and another of shareholder's corporations could be held jointly liable for debtor-corporation's debts under veil piercing / alter ego theories, in part because the businesses were operated as a single pool of assets and the entities paid each other's expenses); *Simek v. Erdman* (*In re Erdman*), 236 B.R. 904, 911-12 (Bankr. D. N.D. 1999) (discussing veil piercing under North Dakota law).

subsidiaries in accordance with § 10-19.1-110 of the North Dakota statutes.[5] That section provides that the notice of dissolution must be published in accordance with certain requirements, *and* by "[g]iving written notice to known creditors and claimants pursuant to subsection 35 of section 10-19.1-01."[6] At oral argument on appeal, the MAD Trustee admitted that, even though he had lists of vendors with whom the various subsidiaries had done business, he did not send notice of the dissolution to those creditors. The Bankruptcy Court did not make any finding as to whether the MAD Trustee complied with the applicable dissolution statutes. If the MAD Trustee did not comply, then the funds being held by him as MAD's Trustee should be made available to all creditors of the dissolved subsidiaries, not just MASI. Conversely, if the MAD Trustee did properly dissolve the subsidiaries, then only those creditors who properly filed claims in the respective dissolutions are entitled to share in the funds, and then only to the extent that those funds came from the subsidiaries indebted to such creditors.

The Bankruptcy Court concluded that MAD is responsible for the debts of its subsidiaries to MASI, but the Court came to that conclusion without first determining whether those subsidiaries had been properly dissolved under North Dakota law. Since liquidation of these companies was not done through substantive consolidation, and entitlement to a distribution from the proceeds of the subsidiaries' assets therefore flows from the question of whether the subsidiaries were properly dissolved under North Dakota law, we conclude that the Bankruptcy Court erred in failing to make a determination on that issue.

On remand, the Bankruptcy Court should determine whether the MAD Trustee complied with applicable North Dakota law in dissolving the subsidiaries. If so, the Court should then determine whether MASI or any other creditors retain claims

---

[5] N.D. Cent. Code. § 10-19.1-110.

[6] N.D. Cent. Code § 10-19.1-110(1)(b).

against the proceeds now being held by MAD. If the dissolution process followed by the Trustee did not comply with North Dakota law, and thus did not eliminate such claims, then the Court should determine whether the dissolution proceeds now held by the MAD Trustee should be made available to the creditors of those subsidiaries, either within the bankruptcy proceeding or by simply returning the funds to such subsidiaries. And, finally, the Court should consider whether, given the time and expense involved in sorting out the debts of the subsidiaries, it should not either (i) allow the MAD Trustee to place some or all of the other subsidiaries into bankruptcy and substantively consolidate the cases; or (ii) allow MASI to pierce the corporate veil as to the other subsidiaries which MASI believes owed it money, thereby giving MASI a claim against MAD for the debt owed to MASI from those other subsidiaries, as well as the debt owed to it by MAD directly.

The Order allowing MASI's claim is REVERSED and REMANDED for further findings in accordance with this opinion.

_____