# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

Nos. 07-6068/6069

_____

| | | |
|---|---|---|
| In re: | * | |
| | * | |
| Midwest Agri Development Corp., | * | |
| doing business as Jamestown | * | |
| Implement, doing business as Valley | * | |
| City Equipment, doing business as | * | |
| Midwest Ag Services, doing business | * | |
| as L & E Equipment, doing business | * | |
| as Ellendale Equipment, doing | * | |
| business as Jamestown Agri-Sales, | * | |
| doing business as Agri-Lease, | * | |
| | * | Appeal from the United States |
| Debtor. | * | Bankruptcy Court for the |
| | * | District of North Dakota |
| Russel J. Hoggarth, | * | |
| | * | |
| Creditor–Appellant | * | |
| –Cross-Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Kip M. Kaler, | * | |
| | * | |
| Trustee–Appellee | * | |
| –Cross-Appellant. | * | |
| | * | |

_____

Submitted: March 20, 2008
Filed: April 30, 2008

_____

Before KRESSEL, Chief Judge, MAHONEY and McDONALD, Bankruptcy Judges.

—————

KRESSEL, Chief Judge.

Russel Hoggarth appeals orders of the bankruptcy court which disallowed his secured claim and approved the settlement agreement between the debtor's trustee and Midwest Ag Services' trustee. We reverse the bankruptcy court's disallowance of Hoggarth's secured claim but affirm the approval of the settlement.

## Background

The debtor is a holding company which held shares of various subsidiary corporations, including Midwest Ag Services, Inc. On June 20, 2002, Russel Hoggarth obtained a money judgment against the debtor in the amount of $73,374.16 for unpaid sales commissions. Under a writ of execution issued by the Stutsman County Clerk, the Stutsman County Sheriff levied against all of the debtor's interest in shares of MZB Technologies LLC, Midwest Ag Services, Inc., Jamestown Implement, Inc., and Jamestown Agri-Sales Inc. on July 18, 2002. On August 14, 2002, the Stutsman County Sheriff gave notice of the execution sale of the debtor's shares of its subsidiary corporations and the debtor's assets . The execution sale was scheduled for September 16, 2002. On August 28, 2002, the sheriff levied against most of the debtor's assets, including its accounts and rights to payments.

On September 12, 2002, the debtor filed its chapter 11 bankruptcy petition. Due to the bankruptcy, the execution sale did not occur. As a result, on September 24, 2002, the sheriff returned the execution of judgment to the Stutsman District Court Clerk wholly unsatisfied.

On January 10, 2003, Hoggarth filed a proof of claim for $75,762.04 in the debtor's bankruptcy case. Hoggarth indicated that the claim was secured by real estate, motor vehicles, and other property. The entire claim arose from Hoggarth's June 20, 2002, judgment against the debtor.

On January 24, 2003, the bankruptcy court converted the case to chapter 7, and Kip Kaler was appointed trustee. As part of the bankruptcy liquidation, the trustee dissolved all of the debtor's subsidiaries except Midwest Ag Services. Kaler directed the president of Midwest Ag Services to file a chapter 7 bankruptcy petition, which the president did on February 12, 2003. Wayne Drewes was appointed trustee. Hoggarth alleges that the debtor's trustee received approximately $280,653.64 from his liquidation of property subject to Hoggarth's lien. The trustee's report filed March 2, 2004, estimated that the trustee was in possession of assets valued at approximately $600,000.

On June 29, 2006, Drewes, Midwest Ag Services' trustee, filed a $1.2 million claim in the debtor's case. The claim was for money loaned, services performed, and money due from an affiliate. The debt arose due to the debtor's habit of commingling the assets and liabilities of itself and its subsidiaries. At the end of the fiscal year, the debtor would account for the assets and liabilities of each separate entity. However, due to its financial difficulties, the debtor did not complete a year-end accounting for fiscal year 2002. Thus, Midwest Ag Services was not compensated for the money the debtor and its subsidiaries owed it. Kaler, the debtor's trustee, objected to Midwest Ag Services' claim. On December 15, 2006, the bankruptcy court allowed Midwest Ag Services' claim in the amount of $894,476.02. On appeal, we reversed and remanded. *See Kaler v. Midwest Ag Services, Inc. (In re Midwest Agri Development Corp.)*, 369 B.R. 408 (B.A.P. 8th Cir. 2007). As part of our remand, we directed the bankruptcy court to determine whether liquidation of the debtor's subsidiaries complied with North Dakota law, and if so, if Midwest Ag Services or other creditors had claims against the bankruptcy estate's assets. We also directed the bankruptcy

3

court to consider whether the debtor's and Midwest Ag Services' cases should be consolidated or whether Midwest Ag Services should be allowed to pierce the debtor's corporate veil.

The two trustees, with the encouragement of the bankruptcy court, mediated and settled the disputed claim. On August 14, 2007, the debtor's trustee filed a motion to approve the settlement agreement. The agreement stipulated that the debtor's trustee would pay Midwest Ag Services' trustee $101,000 and Midwest Ag Services's trustee would give up his claims against the debtor's estate. Hoggarth objected to the settlement agreement on the grounds that he was a fully secured creditor who opposed the use of his security to fund the settlement. In response, the debtor's trustee objected to Hoggarth's secured claim. The trustee alleged that, as a matter of law, Hoggarth lost constructive possession of the debtor's property when the debtor filed bankruptcy. Due to his loss of constructive possession, Hoggarth's lien no longer attached to the debtor's property. In the alternative, the trustee argued that to the extent the court found that Hoggarth's claim was secured, the lien was avoidable as a preference. Although the statute of limitations prohibited the trustee from filing a preference action, the trustee argued that he could raise the preferential nature of Hoggarth's lien defensively in response to Hoggarth's claim.

The bankruptcy court held a hearing on the trustee's motion to approve the settlement agreement and his objection to Hoggarth's secured claim on October 3, 2007. On October 31, 2007, the bankruptcy court rejected the trustee's argument that Hoggarth lost his lien due to his loss of constructive possession of the debtor's property. However, the court determined that Hoggarth's lien was preferential and disallowed his claim as a secured claim but allowed it as an unsecured claim. In a separate order, the bankruptcy court overruled Hoggarth's objection and approved the settlement between the trustees. Hoggarth appealed both the disallowance of his secured claim and the approval of the settlement. The trustee cross-appealed the decision of the bankruptcy court which found that Hoggarth retained his lien despite

his loss of constructive possession, but avoided Hoggarth's lien as a preferential transfer.

## Standard of Review

We review the bankruptcy court's factual findings for clear error and its conclusions of law de novo.  *Debold v. Case*, 452 F.3d 756, 761 (8th Cir. 2006); *In Re Vondall,* 364 B.R. 668, 670 (B.A.P. 8th Cir. 2007).  We review issues committed to the bankruptcy court's discretion for an abuse of that discretion.  *In re Neal*, 461 F.3d 1048, 1055 (8th Cir. 2006).  A bankruptcy court's approval of a settlement is reviewed for plain error or abuse of discretion.  *New Concept Housing, Inc. v. Poindexter (In re New Concept Housing, Inc.*), 951 F.2d 932, 939 (8th Cir. 1991).

## DISCUSSION

### The Trustee May Not Appeal From a Judgment in His Favor.

The trustee asked the bankruptcy court to treat Hoggarth's claim as an unsecured claim.  While the bankruptcy court ruled against the trustee on one of his two arguments, it granted the trustee the relief he requested.  "A party may not appeal from a judgment or decree in his favor, for the purpose of obtaining a review of findings he deems erroneous which are not necessary to support the decree." *Electrical Fittings Corp. v. Thomas & Betts Co.,* 307 U.S. 241, 242 (1939).  That the trustee does not agree with all of the bankruptcy court's findings does not allow us to review the findings on the request of the prevailing party.  *See California v. Rooney*, 483 U.S. 307, 311 (1987); *Elkin v. Metro Prop. & Cas. Ins. Co. (In re Shkolnikov)*, 470 F.3d 22, 24 (1st Cir. 2006).  However, the trustee may assert alternative grounds for decision, and we may affirm the bankruptcy court's decision on any basis supported by the record.  *See Power Equip. Co., LLC v. Case Credit Corp. (In re Power Equip. Co., LLC*), 309 B.R. 552, 559 (B.A.P. 8th Cir. 2004).  Therefore, we

5

will consider the trustee's allegation that Hoggarth lost constructive possession, and therefore his lien, due to the debtor's bankruptcy as an alternative reason for our decision. However, the trustee may not appeal the bankruptcy court's order which disallowed Hoggarth's secured claim.

## **Hoggarth Retained His Lien on the Debtor's Property Despite the Debtor's Bankruptcy.**

Under North Dakota law, the sheriff need not physically possess property in order to subject it to a judicial lien. N.D.C.C. § 28-21-08. Only on property which is capable of manual delivery must the sheriff take the property into custody. N.D.C.C. § 28-21-08. A debtor's estate includes property of the debtor that has been seized by a creditor prior to the bankruptcy, but that has not yet been sold. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 211 (1983). Section 542(a) requires an entity holding property of the debtor that the trustee can use under section 363 to turn the property over to the trustee regardless of the debtor's possessory interest in the property. *Id.* at 206. However, when property seized prior to the filing of a petition is drawn into the bankruptcy estate, the liens of the secured creditors are not destroyed. *Id.* at 211-12. The lienholders remain entitled to adequate protection of their interests, and to other rights enjoyed by secured creditors. *Id.* The filing of bankruptcy replaces the protection afforded by possession with the Bankruptcy Code's protections, including adequate protection. *See Id.* at 206.

Although the property on which Hoggarth's lien attached was subject to turnover, Hoggarth's lien did not vanish as a result of the turnover of the debtor's property to the trustee. North Dakota law does not contain a provision which requires Hoggarth to retain constructive possession in order to maintain his lien. In addition, the Supreme Court in has indicated that even where possession is necessary to create a secured interest, the secured creditor in possession of the bankruptcy estate's property does not lose his lien if he turns that property over to the trustee. *See Whiting*

6

*Pools,* 462 U.S. 198. Instead, the secured creditor may seek payment of his claim through the bankruptcy process rather than through the sale of his secured assets. This is precisely what Hoggarth has done in this case. Thus, we agree with the bankruptcy court that Hoggarth's lien was not lost as a result of the bankruptcy filing.

## The Trustee Is Time-barred from Using § 502(d).

For disallowance of Hoggarth's claim, the trustee relies on 11 U.S.C. § 502(d) which states that "the court shall disallow any claim of any entity . . . that is a transferee of a transfer avoidable under section . . . 547 . . . of this title unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 550." In other words, section 502(d) requires the recipient of a preferential transfer to return the transfer to the trustee prior to receiving payment on any claims the recipient may possess.

Under 11 U.S.C. § 547(b) a trustee may avoid a preferential transfer of a debtor's interest in property. In a voluntary case, the trustee must initiate an action to avoid a preferential transfer within two years after the filing of the bankruptcy petition. 11 U.S.C. § 546(a)(1). The trustee did not commence any such action and is now barred from doing so.

No statute or rule provides a time period within which a trustee must object to a claim. However, when the objection is based on section 502(d), the Eighth Circuit Court of Appeals has held that a trustee must obtain a valid judgment under the applicable avoidance provision prior to asserting a defense under section 502(d). *See Holloway v. Internal Revenue Service (In re Odom Antennas, Inc.)*, 340 F.3d 705, 708 (8th Cir. 2003). Because section 502(d) provides that an entity's claim is not disallowed if the entity pays the amount owed or turns over the property, the court may only use section 502(d) to disallow a claim if the entity is first adjudged liable under the applicable section. *Id.* If the court does not first determine avoidability,

7

then the court cannot determine if section 502(d) applies. *Id.* Section 502(d) requires the trustee to first obtain an order before asserting a defense under section 502(d). *See in re Marketing Associates of America, Inc.*, 122 B.R. 367, 369-70 (E.D. Mo. 1991).

The parties agree that the trustee asserted his defense under section 502(d) after the time to bring an avoidance claim under section 547 had elapsed. The trustee failed to obtain a judgment avoiding Hoggarth's lien within the time period prescribed by section 546(a)(1). Although the trustee attempts to distinguish *Holloway* because the creditors in *Holloway* sought disallowance of other creditors' claims under a Bankruptcy Code section which is available only to trustees, the Eighth Circuit makes no such distinction. The trustee must obtain an order avoiding the claim prior to asserting section 502(d) defensively. If there is no valid order under section 547 which avoids a transfer, the trustee cannot assert a defense under section 502(d). The Eighth Circuit has found that section 502(d) does not allow the trustee to circumvent the normal time period in which he must bring an action to avoid the secured creditors' claims as preferences. Therefore, we conclude that the bankruptcy court should not have allowed the trustee to use section 502(d) as a defense to Hoggarth's claim or disallowed his secured claim.

## The Bankruptcy Court Properly Approved the Settlement.

Hoggarth objected to the trustee's settlement arguing that he was a secured creditor and he opposed the use of his collateral to fund the settlement agreement. However, he raised no objection to the settlement in his brief, and at oral argument, he indicated he did not object to the settlement and in fact supported it. His concern is that the trustee will not pay his secured claim first. The Bankruptcy Code does not guarantee that a secured creditor will be paid first in time. It does require that a secured claim be adequately protected. 11 U.S.C. § 363(e) indicates that: "at any time, on request of an entity that has an interest in property . . . proposed to be used, sold, or leased, by the trustee, the court with or without a hearing, shall prohibit or

condition such use sale or lease as is necessary to provide adequate protection of such interest." "In the bankruptcy context, adequate protection is a safeguard which is provided to protect the rights of secured creditors, throughout the proceedings, to the extent of the value of their property." *Lend Lease, a Division of National Car Rental Systems, Inc. v. Briggs Transportation Co. (In re Briggs Transportation Co.)*, 780 F.2d 1339, 1342 (8th Cir. 1985). A debtor, in structuring a proposal of adequate protection for a secured creditor, should attempt to provide the creditor with the value of his bargained for rights. *Martin v. United States Commodity Credit Corporation (In re Martin)*, 761 F.2d 472, 476 (8th Cir. 1985). Whether adequate protection exists depends upon the nature of the collateral and the nature of the debtor's proposed use of that collateral. *Id.*

By Hoggarth's own assertions, the trustee currently holds estate assets with a value of approximately $280,000 from liquidation of his collateral. All of the estate's funds are in cash, so there is no risk that the value of the assets will diminish due to depreciation or wasting. The $101,000 settlement payment to Midwest Ag Services would reduce the value of Hoggarth's collateral to approximately $179,000, subject to his secured claim. This is adequate protection for Hoggarth's $76,000 secured claim. Because Hoggarth's claim is adequately protected and he has no other objection to the settlement agreement, we conclude that the bankruptcy court properly approved the settlement agreement.

## CONCLUSION

For the foregoing reasons, we dismiss the trustee's appeal, reverse the bankruptcy court's disallowance of Hoggarth's secured claim and affirm the bankruptcy court's approval of the settlement agreement between Midwest Ag Services and the debtor.