**FIRST BANK OF MILLER, MILLER, SOUTH DAKOTA, Appellants**

v.

**George John WIESELER and James Michael Wieseler, d/b/a Wieseler Partnership, George John Wieseler, and Delores Jean Wieseler, SSN 503–30–3278 and 504–28–5903, James Michael Wieseler and Marietta Laree Wieseler, SSN 504–52–9424 and 516–50–4766, Appellees.**

Civ. No. 84–3094.
Bankruptcy Nos. 384–0063 to 384–0065.

United States District Court,
D. South Dakota, C.D.

Jan. 9, 1985.

Ron J. Volesky, Churchill, Manolis, Freeman & Volesky, Huron, S.D., for appellants.

Max A. Gors, James E. Carlon, Pierre, S.D., for appellees.

## MEMORANDUM OPINION

DONALD J. PORTER, District Judge.

On July 30, 1984, George and James Wieseler, d/b/a Wieseler Partnership, filed a Chapter 11 voluntary petition on behalf of their farming and ranching partnership. Also on July 30, the partners with their respective wives filed individual Chapter 11 petitions. At an expedited hearing held on September 13, 1984, the three bankruptcy estates were consolidated. The primary purpose of the expedited hearing, however, was to consider debtors' motion requesting use of "cash collateral" pursuant to 11 U.S.C. § 363. Specifically, debtors desired to use proceeds from the sale of livestock and crops subject to a security interest held by First Bank Miller (creditor) to meet their ongoing farming expenses and continue operating another year. In compliance with 11 U.S.C. § 363(e), as "adequate protection" of creditor's interest in the property debtors sought to convert into proceeds, debtors offered a replacement lien in their anticipated 1985 grain harvest and in livestock they expected to buy in March, 1985 and sell in the summer and early fall of 1985.

At the conclusion of the hearing, the bankruptcy court orally granted debtors' motion. On September 21, 1984, the bankruptcy court denied creditor's motion for a stay pending appeal, and on October 5, 1984, the court entered its findings of fact and conclusions of law.

The bankruptcy court's grant of debtors' cash collateral motion is the subject of this appeal. In conjunction with a review of that decision, on September 26, 1984, this court granted creditor's motion for a stay pending appeal. This court did, however, on the agreement of the parties, except from the stay debtors' sale of 171 head of cattle, 106 of which had already been sold, provided they deposit the proceeds in their debtor-in-possession account and leave the proceeds there until further notice of this court. Having now considered the record on appeal and the arguments of the parties, this court holds pursuant to 11 U.S.C. § 363(e) that debtors failed to meet their burden of proof on the issue of adequate protection. Accordingly, the case is remanded to the bankruptcy court for further proceedings not inconsistent with this opinion.

## FACTS

George and James Wieseler, brothers, are life-long farmers and ranchers, and have been partners since 1969. Together they own approximately 1,960 acres of land in central South Dakota where they raise cattle and grain. At the expedited bankruptcy hearing, James Wieseler, the only witness called by either side, testified that the majority of grain the debtors produce is used as feed for their livestock.

James Wieseler further testified that in the course of maintaining their farming and ranching operation, debtors have done business with and have been financed by First Bank Miller. This relationship with creditor is further evidenced by debtors' bankruptcy petition which states that debtors owed creditor $309,000 at the time of filing. Although the original promissory notes and security agreements are not part of the record on appeal, the parties apparently agree that this debt was secured by a security interest in all of the debtors' machinery, equipment, cattle, grain and feed.

Debtors' cash collateral motion proposes that they be permitted to sell grain and livestock subject to creditor's security interest. At the expedited bankruptcy court

hearing, debtors projected their expenses between September, 1984 and September, 1985 to be $321,710. They also estimated that the property they wished to convert to cash collateral was worth $186,300 at the time they filed their petitions and calculated that they could sell that same property for $279,050. Debtors' "Exhibit E" categorize and value the property debtors desired to sell. Figure 1 is a substantial reproduction of Exhibit E.

FIGURE 1

| Estimated Sale Price at Time of Filing (July 30, 1984) | | | | | Estimated Sale Price Under Cash Collateral Order (Issued September 13, 1984) | | | |
|---|---|---|---|---|---|---|---|---|
| 70 | cows | @ $400 | = | $ 28,000 | 70 | cows | @ $525.00 = | $ 36,750.00 |
| 30 | heifers | @ $380 | = | $ 11,400 | 30 | heifers | @ $470.00 = | $ 14,100.00 |
| 141 | steers | @ $400 | = | $ 56,400 | 141 | steers | @ $400.00 = | $ 70,500.00 |
| 124 | bred | | | | 124 | bred | | |
| | heifers | @ $400 | = | $ 49,600 | | heifers | @ $550.00 = | $ 68,200.00 |
| 65 | calves | @ $100 | = | $ 6,500 | 65 | calves | @ $350.00 = | $ 22,750.00 |
| | wheat | | = | $ 11,000 | | 7,000 bu. wheat @ $3.75/bu. | = | $ 26,250.00 |
| | barley | | = | $ 12,000 | | 7,000 bu. barley @ $2.00/bu. | = | $ 14,000.00 |
| | corn | | = | $ 3,000 | | 4,500 bu. corn @ $3.00/bu. | = | $ 13,500.00 |
| | oats | | = | $ 8,400 | | 6,500 bu. oats @ $2.00/bu. | = | $ 13,000.00 |
| | TOTAL | | | $186,300 | | TOTAL | | $279,050.00 |

On direct examination, James Wieseler testified that the figures contained in Exhibit E were either made by himself or at his direction. Other than that, debtors offered no explanation as to the genesis of the figures in Exhibit E.

In this case, the bankruptcy court accepted as the cornerstone of debtors' adequate protection proposal, debtors' offer of a replacement lien in their 1985 grain harvest and some livestock they anticipated buying and selling in 1985. Debtors' "Exhibit C", which was received in evidence, specifies the quantities and values of the items comprising the replacement lien:

DEBTORS' EXHIBIT C
Adequate Protection

| | |
|---|---|
| 500 yearlings to be purchased in March at $350.00 | 175,000.00 |
| 203 acres corn to yield 40 bu./acre at $3.00 bu. | 24,360.00 |
| 226 acres wheat to yield 30 bu./acre at $3.75 bu. | 13,125.00 |
| 70 acres oats to yield 80 bu./acre at $2.00 bu. | 11,200.00 |
| 230 acres barley to yield 30 bu./ acre at $2.00 bu. | 7,800.00 |
| 130 acres alfalfa to yield 2 ton/acre at $40.00 ton | 10,400.00 |
| 205 acres hay to yield 1 ton per acre at $30.00 ton | 6,150.00 |
| portion of increase of value in yearling crop | 31,015.00 |
| TOTAL | 279,050.00 |

At the conclusion of the September 13, 1984 hearing, the bankruptcy court granted the debtors' motion to use cash collateral, ordering that it remain effective until February of 1985. The bankruptcy court indicated it would hold a hearing at that time to review the debtors' use of the cash collateral. Additionally, the court ordered debtors to (1) provide creditor with regular financial reports including an annotated bank statement disclosing the identity and purpose of each transaction; (2) keep creditor apprised of the disposition of major assets and permit its representatives to inventory and inspect any collateral located on debtors' farm; (3) conduct their opera-

tion so as to stay within a specified budget; (4) deposit any cash received from the sale of collateral in excess of cash needed for immediate expenses in an interest-bearing account; and (5) provide creditor with a lien on both the debtor-in-possession and interest-bearing accounts.

## DECISION

### A. Background

Essentially, creditor argues on appeal that a replacement lien on crops to be planted in 1985 and livestock not yet purchased is not adequate protection[1] of its interest in presently held livestock, proceeds, and crops. Creditor is entitled to adequate protection of its lien in the presently held property by virtue of Section 363(e) of the Bankruptcy Code which provides that:

Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold or leased, or proposed to be used, sold, or leased, by the trustee, the court shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest. In any hearing under this section, the trustee has the burden of proof on the issue of adequate protection.

Adequate protection is not defined in the Bankruptcy Code.[2] Section 361[3] of the Code simply illustrates, in non-exclusive terms, some methods by which adequate protection may be provided. One of these methods is the replacement lien. 11 U.S.C. § 361(2). However, whether a replacement lien is the correct device for affording adequate protection, or whether it alone will be

1. One commentator suggests that the Bankruptcy Code's "adequate protection" requirement is derived from two sources: practical considerations and the fifth amendment. Price, *Adequate Protection Under the Bankruptcy Act of 1978*, 71 Ky.L.J. 727, 729–31 (1983). A creditor has a practical concern that unrestrained use of secured property by the debtor will dissipate the estate. At the same time, a Chapter 11 or 13 debtor clearly has a compelling need for cash collateral to meet immediate operating expenses such as rent and utilities. Section 363(e) resolves this conflict somewhat by permitting the debtor to use secured property, but only after proving that creditor's interest will be adequately protected. *Id.* at 730. *See In re George Ruggiere Chrysler-Plymouth*, 727 F.2d 1017, 1019 (11th Cir.1984).

With respect to the constitutional source of the adequate protection requirement, the United States Supreme Court has held that the bankruptcy power is subject to the fifth amendment due process clause prohibiting the taking of private property without compensation despite a public purpose for the taking. *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935). *See* S.R.Rep. No. 989, 95th Cong., 2d Sess. 49 (1978), reprinted in 1978 U.S.Code Cong. & Ad.News 5787, 5835.

2. In *In re Alyucan Interstate Corp.*, 12 B.R. 803, 805, (Bkrtcy.D.Utah 1981), the court noted that Congress' failure to define adequate protection was "probably deliberate." The court went on to state that:

Congress was aware of the turbulent rivalry of interests in reorganization. It needed a concept which would mediate polarities. But a carefully calibrated concept, subject to a

brittle construction, could not accommodate the 'infinite number of variations possible in dealings between debtors and creditors.' H.R. Rep. No. 95–595, 95th Cong. 1st Sess. 339 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787, 6295. This problem required, not a formula, but a calculus, open-textured, pliant, and versatile, adaptable to 'new ideas' which are 'continually being implemented in this field' and to 'varying circumstances and changing modes of financing.' *Id.* Adequate protection was requisitioned to meet these needs.

*Id.*

3. 11 U.S.C. § 361 provides:

When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by—(1) requiring the trustee to make periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property; (2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or (3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization of such entity of the indubitable equivalent of such entity's interest in such property.

sufficient depends upon the circumstances of the case. *See* 2 *Collier on Bankruptcy*, ¶ 361.01, 361–9 (L. King 15th ed. 1983).

■ Whatever the method of adequate protection, the purpose of adequate protection is always to preserve the cash collateral creditor's "interest in property." Protection of the creditor's interest in property means that a debtor must sufficiently protect the *value* of the creditor's interest in the property involved. *In re American Mariner Industries, Inc.*, 734 F.2d 426, 431 (9th Cir.1984); *In re George Ruggiere Chrysler-Plymouth*, 727 F.2d 1017, 1019–20 (11th Cir.1984); *In re Alyucan Interstate Corp.*, 12 B.R. 803, 803 (Bkrtcy.D. Utah 1981). As a House Report states, "[t]hough a creditor might not receive his bargain in kind, the purpose of the section [§ 361] is to insure that the secured creditor receives in value essentially what he bargained for." H.R.Rep. No. 595, 95th Cong.2d Sess. 339 (1978), reprinted in 1978 U.S.Code Cong. & Ad.News 6295.

The same House Report is instructive on the concept of "value" in the context of adequate protection:

> [Section 361] does not specify how value is to be determined nor does it specify when it is to be determined. These matters are left to case-by-case interpretation and development. It is expected that the courts will apply the concept in light of facts of each case and general equitable principles.

*Id.* *See In re American Mariner Industries, Inc., supra*, 734 F.2d at 431.

**B. *The Value of First Bank Miller's Interest in the Property***

From the preceding, it seems clear that a determination of the value of creditor's interest in the grain and livestock subject to its security interest is essential before deciding whether or not creditor is adequately protected. Yet in this case the bankruptcy court made no specific finding as to the value of this interest. True, the court did accept in evidence debtors' Exhibit E which contained the debtors' estimate of what they could sell the grain and livestock

for on July 30, 1984, the date of the debtors' petitions. However, that is not the same as finding that the value of a creditor's interest in the property is $186,300. In its findings, the bankruptcy court states only that Exhibit E is one of two exhibits showing "a source of cash proceeds from the sale of cattle and grain." Findings of Fact and Conclusions of Law ¶ 7 (October 5, 1984).

■ On remand, the bankruptcy court is directed to make a specific finding regarding the value of creditor's interest in the property as of July 30, 1984, the date debtors filed their Chapter 11 petitions. As "[t]he purpose of adequate protection is to assure the recoverability of this value during the hiatus between petition and plan", *In re Alyucan Interstate Corp., supra*, 12 B.R. at 808, the creditor in this case is entitled to a clearer picture of what amount is actually involved. Further, it is this court's opinion that such a finding in this case would be consistent with the language of the House Report to the effect that value is to be determined when equitable principles and the facts of the case suggest it should be determined. In the case of a creditor's request under Section 362(d) for relief from the automatic stay, like the instant case, creditor will prevail unless debtor can prove adequate protection of creditor's interest in property. If the debtor successfully opposes a creditor's request for relief under Section 362(d), creditor retains the security interest in the bargained-for and existing collateral. Here, in contrast, if debtor is permitted to spend the cash proceeds, the existing, bargained-for collateral is gone. *See In re Berens*, 41 B.R. 524, 527 (Bkrtcy.D.Minn.1984). With so much at stake for the creditor, it seems incumbent on the bankruptcy court to make a specific value determination before permitting debtor to spend cash collateral.

**C. *The Replacement Lien***

Even assuming for purposes of this opinion that the value of creditor's interest in property is $186,300, this court is not satisfied that debtors have met their burden of

proof on the issue of adequate protection. Debtors have proposed a replacement lien on crops and livestock as adequate protection of creditor's interest. They argue on appeal that this lien adequately protects because the value of the lien will increase commensurate with the depletion of the cash collateral. With regard to the non-existent crop portion of the replacement lien, this court is entirely unsatisfied that in light of the uncertainties associated with farming such as market price and weather, debtors have shown that the value of creditor's interest will be preserved. The livestock portion of the replacement lien presents a slightly different problem. It is the opinion of this court that once purchased, the livestock are subject to fewer uncertainties than an unmatured crop in the fields. True, such variables as weather, disease and market conditions have their place in the ranching business as well as the farming business, but the fact that once purchased, the livestock are in-being, and if necessary, re-saleable, distinguishes them from a non-existent crop. Therefore, the court will treat the livestock portion of the replacement lien separately in this opinion.

1. Non-existent crops

In *In re Berg*, 42 B.R. 335 (D.C.D.N.D. 1984), a cash collateral case in which Chapter 11 debtors proposed they be allowed to sell grain under loan to the Commodity Credit Corporation in exchange for a lien on nonexistent crops, the Federal District Court of North Dakota pointed out the shortcomings of a replacement lien such as the one proposed here. In rejecting the debtors' proposal, the *Berg* court reasoned that a lien on an existing crop has a greater value than a lien on a crop to be grown because an existing crop is not only less susceptible to weather and other natural phenomena, it is also more readily controlled, protected and liquidated. *Id.* at 338.

*In re Berens, supra,* 41 B.R. at 524, is another recent case involving a cash collateral motion in which debtors offered a replacement lien in non-existing crops as adequate protection. Debtors contemplated using the proceeds from the sale of existing livestock and grain to plant a soybean crop on their "home farm" and on some rented acreage. The bankruptcy court permitted the debtors to plant on the home farm, but refused to allow them to use cash collateral proceeds to plant on the rented land. In a well-reasoned opinion, the *Berens* court stated:

[T]he standard of adequate protection to be afforded a creditor when its cash collateral is being used should be a high one. Replacement liens in "hard assets" such as land or other minimally depreciable assets would be in most instances sufficient. However, to me, a lien in a crop to be grown with all of the other risks attendant to that is not sufficient adequate protection except where a significant profit margin is very likely or a minimal guarantee of payment is proffered through crop insurance. To ask a creditor to release cash requires a strong likelihood of return. The uncertainties of the weather, crop prices, and all the other uncertainties inherent in farming increase the insecurity of a replacement lien solely in crops to be grown.

*Id.* at 528.

This court substantially agrees with the *Berg* and *Berens* opinions. In most cases, a bare replacement lien in non-existent crops will not be enough protection to allow a debtor to proceed on a cash collateral motion. The debtor's standard in cash collateral cases is a high one. To meet it, the debtors in the instant case must go beyond simply estimating what they hope they can harvest and what they hope the market will bring for it.

In the *Berens* case, one of the reasons the bankruptcy court gave for refusing to permit the debtors to use cash collateral to plant the leased land was the lack of all-risk insurance.[4] *In re Berens, supra,* 41

4. Debtors offered an assignment of federal crop insurance to buttress their replacement lien in

the *Berg* case, but the district court was unpersuaded. The court was not satisfied that the

B.R. at 527. The only insurance offered by the debtors in the instant case is their promise to exercise good husbandry and farming practices. Motion and Notice of Motion For Use of Cash Collateral at 3 (August 27, 1984). Although there is nothing in the record that would lead this court to believe other than that debtors are good farmers presently suffering financial difficulties, and that they would use their best efforts to protect the value of creditor's interest, the uncontrollable variables[5] of debtors' business greatly diminish the value of their personal assurance.[6]

In ruling that the debtors could use cash collateral to plant a soybean crop on the home farm, the *Berens* court was able to demonstrate by average crop yields (bushels per acre) the potential profit margins of planting the home as compared to the rented farmland. The court could state that there was a "reasonable certainty" that debtors would at least break even farming their own property, but that increased costs made farming the rented land too risky. *In re Berens, supra,* 41 B.R. at 527.

■ In the instant case, debtors have not sufficiently made apparent the potential profitability of being permitted to carry on their farming operations another year financed by creditor's security. Debtor witness James Wieseler testified on direct examination that the estimates contained in the debtors' adequate protection proposal were based on conservative estimates drawn from his past experience and on the debtors' established crop yields at the ASCS office. However, on cross-examination Wieseler admitted that no one, including the ASCS, had verified his figures. Moreover, nowhere in the record does it mention how the "average" yield per acre and price per bushel figures were calculated. Debtors present no evidence pertaining to how many years were used in the averaging process; whether the yield averages are based on county-wide estimates or solely debtors' land; whether the variance in market price on the various crops is great or small from year to year; and if average yields are based on several years, whether there are any significant recent trends that might affect their predictions. Under the circumstances of this case, such unsubstantiated testimony is inadequate as a matter of law to meet the debtors' Section 363(e) burden of proof.

### 2. Livestock to be Purchased.

■ As stated previously in this opinion, livestock are admittedly subject to many of the same uncontrollable conditions as crops

---

insurance provided for enough contingencies: it did not insure against poor farming practices; management errors; market price decreases or discounting due to poor quality grain. The *Berg* court also believed that a cash collateral creditor should not be made to depend upon the terms and interpretation of an insurance contract to which it was never intended to be a party. *In re Berg,* 42 B.R. 335, 338 (D.C.D.N.D. 1984).

5. The need for something more than debtors' personal assurance under the circumstances of this case is underscored by the fact that none of the debtors' crops are irrigated, Transcript at 21 (Nov. 14, 1984), making them all the more subject to weather conditions. The existence of irrigation capability was found to be important by the South Dakota Bankruptcy Court in an earlier decision regarding an adequate protection proposal having as one of its elements a replacement lien in crops. *In re Sheehan,* 38 B.R. 859, 866 (Bkrptcy.D.S.D.1984) ("bulk of crop is irrigated, thus eliminating in large part the potential ill effects of drought.").

6. In their brief, debtors maintain the creditor will receive more than their personal assurance because the bankruptcy court added several more provisions to the debtors' adequate protection proposal in its order previously summarized in this opinion. This court believes, however, that despite the debtors' personal assurance and the bankruptcy court's order, the cornerstone of debtors' adequate protection offer is still the replacement lien on presently non-existent crops and livestock presently not owned by the debtors. With respect to the provisions of the bankruptcy court's order, most of them are in the nature of accounting devices imposed on the debtors to insure that creditor has up-to-date information pertaining to the collateral and its proceeds. Although the liens on the bank accounts are perhaps more than merely a method of keeping creditor informed, they will not be much protection once the proceeds from the sale of creditor's collateral is reinvested in the debtors' business as contemplated by the debtors.

to be grown. However, in contrast to the inadequacies found in liens on anticipated crops by the *Berg* court, a lien on livestock which will be in-being when purchased is as capable of being inspected, protected, controlled and liquidated as the stored grain and livestock debtors now seek to convert into cash collateral. Furthermore, livestock would seemingly be less subject to variations in weather and the occurrence of natural disasters than crops in the field. Nonetheless, this court is unable to affirm the bankruptcy court with respect to the livestock aspect of the replacement lien. This is primarily due to the paucity of the evidence presented by debtors. As in the case of the non-existent crops, there is nothing to support a conclusion that debtors' predictions are more likely than not. Without sufficient information to measure the adequacy of this part of the replacement lien, the court must again hold that debtors have up to now failed to meet their burden of proof.

### CONCLUSION

By Section 363, the Bankruptcy Code permits debtors to use, sell or lease property in which a creditor has an interest. In many Chapter 11 and Chapter 13 reorganizations, the debtors must be able to use the collateral in order to be rehabilitated. However because debtors' use of the property concomitantly means destruction of the creditor's security, the Bankruptcy Code provides the creditor's interest with adequate protection and directs that the debtor bear the burden of proof on that issue.

In this case, debtors offered a replacement lien in non-existent crops and livestock to be purchased. This court holds that they have not met their burden of proof. This court does not hold that a replacement lien in non-existent property can never be a component of adequate protection. Neither does this court hold that a replacement lien in non-existent property cannot be the sole element of adequate protection. Nor does this court mean by the preceding to offer a specific method for

the debtors in the instant case to meet the adequate protection burden of proof on remand. Rather consistent with the congressional directive for a "case-by-case interpretation and development", and after a review of the record, this court holds that debtors in this case have not shown that their replacement lien will adequately protect the value of creditor's interest in already existing collateral.