**In re STACY FARMS, an Ohio General Partnership, Debtor.**

**Bankruptcy No. 2–87–00554.**

United States Bankruptcy Court, S.D. Ohio, E.D.

March 27, 1987.

## ORDER DENYING MOTIONS REQUESTING AUTHORIZATION TO GRANT SUPERPRIORITY LIEN AND TURNOVER/USE OF CASH COLLATERAL

R.G. COLE, Bankruptcy Judge.

This matter is before the Court on two motions filed by Stacy Farms, a Chapter 12 partnership debtor and debtor-in-possession. The first motion, captioned "Motion for Order Authorizing Borrowing of Interim Funds to Initiate Crop Plantings and Granting Dime Bank Super Priority Upon All Stacy Farms Assets as Collateral ("Motion # 1"), was filed on March 11, 1987, requesting this Court's authorization to grant Dime Bank of Marietta ("Dime Bank") a senior lien on property of the estate that is subject to existing liens. The other motion, styled "Motion for Use of Cash Funds Belonging to Stacy Farms Held by Farmers Home Administration for Crop Preparation and Planting Purposes ("Motion # 2"), was filed on March 23, 1987, and seeks the turnover and use of the sum of $13,500 currently in the possession of Farmers Home Administration ("FmHA").

Debtor requested an expedited hearing on Motions # 1 and # 2. The Court granted Debtor's request, and notice of an expedited hearing was mailed by Debtor to all parties in interest on March 20, 1987. The hearing was held on March 25, 1987, and was attended by Cambridge PCA, which had received a copy of Motion # 1 but had not received copies of the other motions. Neither Cambridge PCA nor FmHA objected to the hearing being held on an expedited basis, but both creditors opposed the relief requested in the Motions.

F. Richard Heath, Hite & Hite, Utica, Ohio, for Cambridge PCA.

Albert R. Ritcher, Asst. U.S. Atty., Columbus, Ohio, for FmHA.

Paul G. Bertram, Jr., Bertram & Schneider, Marietta, Ohio, for Stacy Farms.

### FINDINGS OF FACT

The Court makes, and hereby adopts for purposes of this expedited hearing, the following findings of fact:

1. Debtor is an Ohio general partnership, owned equally by Ralph Stacy and William Stacy, father and son, doing business as Stacy Farms. The Stacy family

has farmed the land in question for four generations.

2. Debtor is engaged in the business of farming; its crop consists of cabbage, melons and eggplant, which are marketed principally on a wholesale basis. Debtor employs as many as 60 workers in its business operations.

3. Debtor's assets consist of farm land and improvements thereon, valued roughly at $75,000; equipment and machinery used in its farming operations, valued at approximately $37,500; and $13,500 in cash on deposit in an escrow account under the control of FmHA. The approximate fair market value of debtor's real property and equipment is $112,500. Inclusion of the $13,500 cash deposit boosts the fair market value of debtor's assets to approximately $126,000 although it is questionable whether the $13,500 should be included in the asset value.

4. Debtor's secured debts, as of the petition date, approximate $500,000. Cambridge PCA has a first lien on certain equipment (although the bankruptcy schedules evidence a lien on crops, too), securing a claim of approximately $8,200. FmHA possesses a first lien on all Debtor's real property and pre-petition crops, and a lien secondary to the lien of Cambridge PCA on Debtor's equipment, as security for its claim of approximately $490,000. Debtor does not contest the validity of these liens nor the amount of the claims. FmHA has served in the past as debtor's principal lender of working capital.

5. As of the filing of the petition, the claim of Cambridge PCA was substantially oversecured while FmHA's claim was substantially undersecured.

6. Horticultural or vegetable farming is a high risk, highly competitive business. Debtor's success with a 1987 crop depends on a number of factors, not the least of which is the need to commence planting operations on or before April 1, 1987. To date, Debtor has invested $10,000—$12,000 in preparations for the 1987 season, including, apparently, the purchase of cabbage plant seedlings which will suffer a 40 percent mortality if left unplanted until the April 24 hearing on confirmation. The Chapter 12 Plan, as proposed, will be abandoned by Debtor if it cannot commence planting by April 1.

7. Debtor requires the use of some $27,000 between now and the hearing on confirmation for the purchase of seed and fertilizer, and other preparatory efforts, in connection with the planting of its 1987 vegetable crop. Debtor requests that FmHA turn over to it the sum of $13,500, representing 1986 crop proceeds, now on deposit in an escrow account controlled by FmHA, and an additional $13,500 from Dime Bank which would be granted a superpriority lien as to that amount. Alternatively, if the Court determines that Debtor has failed to provide adequate protection of FmHA's interest in the $13,500 (which the parties agree is cash collateral), Debtor requests authorization to borrow the entire $27,000 from Dime Bank and to grant Dime Bank a superpriority lien securing that amount.

8. The $27,000 required to commence planting operations consists of the following: trickle irrigation house, $4810; labor, $7000; equipment maintenance, $1000; fertilizer, $6000; peat moss, $2000; chemicals, $2500; payroll taxes, $1000; utilities, $1000; other taxes, $775; and living expenses $500.

9. Debtor's business has "lost money" from 1982 to the present; however, the nature and extent of such losses are unclear. Neither Ralph nor William Stacy could recall specific information about past losses, except to affirm the losses themselves. Debtor's past financial problems have resulted from a variety of events, including undercapitalization, family illnesses, crop disease, crop pests, and production/marketing deficiencies of one sort or another.

10. Debtor has participated in educational programs and has implemented new marketing and production techniques, all in an effort to improve its farming business. Debtor enjoys a reputation as an able operation in the horticultural farm market.

11. Debtor represents that it will be able to repay $27,000 to Dime Bank in June, 1987, when the cabbage crop is harvested and sold.

## DECISION

Debtor's Motions # 1 and # 2 set forth no statutory grounds or case authority for the relief requested. Similarly, Debtor's counsel, in argument to the Court, cited no authority for the relief his client requests, relying instead on an impassioned plea that Chapter 12, often referred to as the Family Farmer Bankruptcy Act of 1986, was designed specifically to assist farmers in the predicament his client finds itself.

The Court agrees that the Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act of 1986 established a new chapter—Chapter 12—which would make it easier for a family farmer to confirm a plan of reorganization. Prior to Chapter 12, family farmers in need of financial rehabilitation could proceed under either Chapter 11 or 13 of the Bankruptcy Code. Because most family farmers' debt exceeded the debt limitations of Chapter 13, they were forced to proceed under Chapter 11, a complicated, time-consuming and expensive form of reorganization. And, for the family farmer, it was often unworkable.

Chapter 12 is designed for use only by the family farmer. "It is designed to give family farmers facing bankruptcy a fighting chance to reorganize their debts and keep their land. It offers family farmers the important protection from creditors that bankruptcy provides while, at the same time, preventing abuse of the system and ensuring that farm lenders receive a fair repayment." See *Joint Explanatory Statement of the Committee of Conference* (Pub.L. 99-554)

Chapter 12 is a new law; however, it fully incorporates other sections of the Bankruptcy Code except in those specific instances where it expressly excludes or modifies existing law. Accordingly, a debtor's request to incur debt under Section 364(c) or (d) must satisfy the requirements contained in that Section. Although Motion # 1 makes no reference to Section 364(d), and Debtor's counsel seemed to be unfamiliar with it, Debtor's counsel seemed to agree in Court that Motion # 1 seeks relief under 11 U.S.C. § 364(d)(1).

Section 364(d)(1) provides as follows:

(d)(1) The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if—

(A) the trustee is unable to obtain such credit otherwise; and

(B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted.

Thus, Section 364(d)(1) authorizes a debtor to obtain credit or incur debt secured by a senior (or equal) lien on already-encumbered property of the estate *only* if:

1. the Trustee (or Debtor-in-Possession) is unable to obtain such credit otherwise; *and*

2. there is *adequate protection* of the interest of the holder of the lien on the property of the estate on which such senior (or equal) lien is proposed to be granted.

The burden of proving adequate protection is on the trustee or debtor-in-possession; and "[i]t is likely in most cases that adequate protection will be provided by conditioning the borrowing to maintain a sufficient equity in the subject property to protect the existing lienholder. 5 *Collier on Bankruptcy*, § 364.05, pp. 364-12, 13 (15th ed.1987).

In Chapter 12 cases, Bankruptcy Code Section 1205 specifies the methods by which adequate protection may be provided. First, Code Section 361 does not apply. Second, when adequate protection is required under Code Sections 362, 363, or 364 of an interest of an entity in property, as is unambiguously required under Section 364(d), adequate protection may be provided as set forth in either Section 1205(b)(1), (2), (3), or (4). Notably, counsel for Debtor did not offer adequate protection under any of the aforementioned statutory bases; to

the contrary, counsel seemed to be of the opinion that the concept of adequate protection does not, or should not, apply in a Chapter 12 case. The Court rejects this argument, given the clear and unambiguous language of Sections 364(d) and 1205.

In considering the merits of Motion # 1, the Court finds that the Debtor failed to establish its inability to obtain other, more favorable credit. The only reference to Debtor's credit difficulties was FmHA's refusal to provide working capital for 1987 and counsel's general statement that lenders require a superpriority lien in situations of this sort. However, there was no evidence that Debtor had applied for, or sought, loans from institutions other than Dime Bank and FmHA, or that the Dime Bank commitment was the most favorable credit available. Consequently, Debtor failed to carry its burden under Section 364(d)(1)(A).

Despite Debtor's failure to establish satisfaction of the requirements imposed by Section 364(d)(1)(A), the Court will examine Debtor's offer or offers of adequate protection under the standards mandated by Sections 364(d)(1)(B) and 1205. The Court notes here that Debtor's counsel expressed a desire to provide adequate protection to the interests of FmHA and Cambridge PCA, if the law so required, but essentially admitted that the Debtor's assets are so thoroughly encumbered that it could offer virtually nothing under Section 1205(b), except the offer to repay Dime Bank from the harvest proceeds in June. Debtor's counsel also offered, in a rather oblique and nonspecific manner, to make a cash payment of some sort, which could be construed as an offer under Section 1205(b)(1).

To the extent Debtor's offer of adequate protection is its promise to extinguish Dime Bank's superpriority lien by repayment out of harvest proceeds, the Court rules that such lien satisfaction is too speculative to constitute adequate protection upon the record before the Court. The Court agrees with the reasoning of other courts, in reasonably analogous situations, that satisfaction of a lien from future crop proceeds is insufficient to constitute adequate protection against the loss of a lien on existing collateral due to the uncertainty and speculation necessarily attendant to the farming business. *Cf., In re Thomas Nikolaisen*, 42 B.R. 335, 12 B.C.D. 523 (Bankr.D.N.D.1984); *First Bank v. Wieseler*, 45 B.R. 871, 12 B.C.D. 900 (Bankr.D.S.D.1985). Thus, despite the elimination of the "indubitable equivalent" language of 11 U.S.C. 361(3), and the requirement in some Circuits to pay lost opportunity costs, Debtor's offer of adequate protection is insufficient under Section 1205.

The Court appreciates the obstacles and frustrations faced by this Debtor. Absent the injection of $27,000 now, and more later, this fourth generation farm will go out of business. Notwithstanding Debtor's dire straits, this Court must weigh the offer of adequate protection against the express provisions of the law; and, despite the apparent loss of a family business, the Court cannot simply eradicate the collateral positions of Cambridge PCA and FmHA without determining that they have received adequate protection for their loss. Here, the grant of a superpriority lien to Dime Bank on all assets of the Debtor, either in the amount of $13,500, $27,000, or the $115,000 that is ultimately required by this Debtor, results in a reduction of FmHA's and Cambridge PCA's collateral/ownership position. Assuming Debtor's assets have a fair market value of $126,000, Cambridge PCA's claim of $8,200 is fully secured by the equipment, valued at approximately $37,500. FmHA's claim of $490,000 is substantially undersecured, but FmHA does have a lien roughly valued at $117,800 on the balance of the property of the estate ($126,000 minus $8,200 equals $117,800). It does not appear that FmHA would have a lien on post-petition crops considering the provisions of 11 U.S.C. § 552. There was no evidence on whether the property would bring a higher or lower value upon liquidation.

If this Court were to grant Debtor's Motion # 1, it would reduce, or eliminate, the collateral positions of FmHA and Cambridge PCA. If, for example, FmHA has a

secured claim of $117,800, the grant of a superpriority lien to Dime Bank would reduce FmHA's collateral value to $104,300 if $13,500 were advanced by Dime Bank pursuant to a grant of a superpriority lien; to $90,800 if $27,000 were advanced; and to $2,800 if the full $115,000 were advanced. Certainly, Congress did not intend for the Debtor to be able to take property in this fashion, under the mechanism established by Section 364(d), without the provision of adequate protection for the reduction or loss of a lien against existing collateral.

 With respect to Motion #2, Debtor's request to use cash collateral as that term is defined in 11 U.S.C. § 363(a), the Court finds that Debtor has not offered adequate protection of FmHA's interest. In enacting Chapter 12, Congress intended that cash collateral receive the same protection as it always has:

> No debtor may use cash collateral unless the secured creditor consents, or the court, after notice and a hearing, authorizes such use. The conferees intend that courts will apply existing legal precedents, consistent with this legislation, when considering applications to use cash collateral.
>
> *Joint Explanatory Statement of the Committee of Conference* (Pub.L. 99–554)

It is axiomatic that cash collateral is special in nature and must be well protected. No such adequate protection has been offered; thus, Motion #2, like Motion #1, must be denied.

 The Court notes an ancillary matter of some concern. The Court's file contains no appointment of counsel to represent the Chapter 12 debtor. An attorney may not be employed by the debtor-in-possession except with the Court's approval. The requirement for approval is found in 11 U.S.C. § 327 and the procedure for obtaining such approval is found principally in Bankruptcy Rule 2014(a). When there is no compliance with the Code or Rules governing appointment, there is no right to compensation. Assuming there has been no Court approval—and this Court believes that Court approval is required in a Chap-

ter 12 case, it is questionable that counsel for debtor may appear before this Court in a representative capacity for this Debtor.

Motions #1 and #2 are hereby DENIED, without prejudice. However, the Court notes here that Debtor filed a "First Amended Motion Combining Motions for Use of Cash Funds totalling $27,000 to Initiate Crop Planting Pending Confirmation Hearing and Granting Dime Bank Senior Priority on all Stacy Farms Assets as Collateral Pursuant to Expedited Notice of Hearing." No request has been made, or agreed to by the parties, to include the foregoing amended motion as part of the record before the Court on the pending motions; but, on its face, the amended motion appears to offer a cash payment or periodic cash payment which does not sufficiently protect the subject creditor's "decrease in the value of property securing a claim or an entity's ownership interest in property" as required by Section 1205(b)(1). It is entirely .possible, given the probable lack of an FmHA lien on 1987 crops, that some form of financing is available for this debtor, or that this debtor can obtain credit other than by the grant of a superpriority lien. However, adequate protection has not been offered under the motions before the Court, and does not appear to exist under the amended motion.

Motions #1 and #2 are DENIED.

IT IS SO ORDERED.