**In re Donald E. WESTCAMP, Debtor.**

**Bankruptcy No. 2-87-00931.**

United States Bankruptcy Court,
S.D. Ohio, E.D.

May 1, 1987.

Larry J. McClatchey, for debtor.

Albert R. Ritcher, Asst. U.S. Atty.

Frank M. Pees, Chapter 12 Trustee.

## ORDER GRANTING DEBTOR'S MOTION FOR AUTHORITY TO USE CASH COLLATERAL UPON GRANT OF ADEQUATE PROTECTION

R.G. COLE, Bankruptcy Judge.

This matter is before the Court on the debtor's motion for authority to use cash collateral upon a grant of adequate protection. The United States of America, acting through the Farmers Home Administration ("FmHA"), filed an opposition to the debtor's motion. A hearing on the motion and opposition thereto was held on April 23, 1987.

The Court observes, preliminarily, that the motion is not accompanied by a supporting memorandum of law containing a brief statement of the grounds with a citation of authorities relied upon by debtor, as required by the Local Rules of the District Court. While our local rules impose no similar requirement on parties opposing motions, it certainly is helpful to the Court when such memoranda contain reasons supporting the opposition instead of a terse and uninformative statement such as is found in FmHA's memorandum.

### Statement of Facts

The testimony and evidence before the Court discloses that the debtor is a family farmer who filed his petition for relief under Chapter 12 on March 6, 1987. FmHA was listed on Schedule A-2 as the holder of a claim in the amount of $576,588.73, secured by certain real estate, farm machin-

ery and equipment, and crops. Debtor's 58.84–acre farmland, on which FmHA has a junior lien, is subject to the senior lien of Mutual Benefit Life Insurance Company, whose claim of approximately $91,000 exceeds the $75,000 fair market value of said real property. The farm machinery and equipment, on which FmHA has a first and best lien, is valued at $50,000. FmHA has a lien on real property owned by the debtor's wife as security for its claim, but debtor has no interest in that land. Finally, the debtor possesses four checks totaling $55,242.15, described below, which represent the proceeds from the sale of debtor's 1986 soybean and corn crop, and which constitute cash collateral in which FmHA has an interest:

| Payee | Date | Amount | Crop |
|---|---|---|---|
| Donald Westcamp & FmHA | 10/20/86 | $12,728.66 | soybean |
| Donald Westcamp & FmHA | 11/04/86 | $15,819.72 | soybean |
| Donald Westcamp & FmHA | 11/25/86 | $25,031.87 | corn |
| Donald Westcamp & FmHA | 12/04/86 | $ 1,661.90 | corn |
| TOTAL | | $55,242.15 | |

No other claimant has an interest in the foregoing cash collateral.

Debtor, by his motion, requests this Court's approval to use the entire sum of $55,242.15 for the purchase of fertilizer, seed, and chemicals, and for other expenses which will be incurred in planting a crop in 1987. Debtor has been unsuccessful in his attempts to borrow money from lending institutions or from FmHA as operating capital for the 1987 farming season; has had his requests for the purchase on credit of crop inputs denied by his trade creditors; and requires the entire $55,242.15, in addition to a government subsidy check of approximately $12,000, to complete planting operations in the spring of 1987.

Debtor's crop consists of wheat, sweetcorn and corn, and soybeans. He has projected cash farm receipts in 1987 of $225,465 from the following sources:

| | |
|---|---|
| Wheat and soybeans | $ 69,100 |
| Corn and sweetcorn | $ 76,825 |
| Hay and straw | $  6,500 |
| Cattle | $  7,500 |
| Custom trucking | $ 12,000 |
| Government program | $ 46,340 |

| | |
|---|---|
| Custom hog feeding | $  7,200 |
| | $225,465 |

He has projected personal and farm expenditures of $166,536, leaving a projected profit of $58,929. Debtor's past projections, submitted to FmHA each year since about 1981, evidence a continuing inability to reduce the FmHA debt and a higher-than-average cost of operation. Debtor admits that the vagaries associated with farming have resulted in somewhat disappointing profit margins in past years, but is optimistic that his restructured operations have positioned him to have a good crop year in 1987.

Debtor has been a farmer since 1950. For 1987, he has made adjustments in his farming operations and selective changes in the land which will be farmed. His 1987 farming operations, for the most part, will be conducted "on the shares," which simply means he will share harvest proceeds with the owner of the land. Debtor's testimony concerning projected income from his share of proceeds on sweetcorn, corn, soybeans and wheat was essentially unchallenged by FmHA. Debtor's projections are as follows:

| Crop | Acres Per Debtor's Share | Bushels/Acre | Price | Income |
|---|---|---|---|---|
| Corn | 500/352 | 110 bu./acre | $1.70/bu. | — |
| Sweetcorn | —/14 | 800–1100 doz. per acre | $1.50–1.20 per acre | $11,000 |
| Soybean | 492/328 | 35 bu./acre | $5.00/bu. | $57,400 |
| Wheat | 116/100 | 50 bu./acre | $2.40/bu. | $12,000 |

Debtor projects income of $12,000 from custom trucking and $7,200 from custom hog feeding.[1] Debtor also anticipates income of $46,340 pursuant to some undescribed government program, an item of income which was unchallenged by FmHA.

Debtor offered the following at the hearing as adequate protection for FmHA's interest in the aforementioned cash collateral:

1. Debtor will grant FmHA a first and best lien of crops yet to be planted, grown or harvested in 1987, and proceeds thereof, whose estimated value is $160,583;

2. Debtor will not grant any other person or entity any lien on 1987 crops or proceeds thereof, nor will debtor permit any "production lien" to attach to 1987 crops or crop proceeds;

3. Debtor will repay FmHA, with interest at the rate of 4.50% per annum, immediately upon harvesting and sale of 1987 crops, and in no event later than November, 1987;

4. Debtor has purchased, and will maintain in full force and effect, multi-peril crop insurance as protection against all hazards and catastrophes typically covered by federal crop insurance; and

5. Debtor will assign FmHA its entitlement to receipt of deficiency payments pursuant to an Agricultural Stabilization and Conservation Service ("ASCS") program, covering any deficiency in price, which payments

have an estimated value of $24,220.86.

On April 24, 1987, debtor filed an Amended Offer of Adequate Protection to Farmers Home Administration. The amended offer simply memorializes the offer as made at the hearing and attaches a specimen copy of debtor's multi-peril insurance policy.

**Conclusions of Law**

FmHA asserts that a lien on crops not yet in existence, that are speculative in nature, and that are subject to the uncertainties of weather and management, will not adequately protect its interest in the existing 1986 crop proceeds. Debtor argues that his offer adequately protects FmHA's interest, because the risks customarily associated with farming have been virtually eliminated by the purchase of crop insurance and debtor's offer to assign ASCS deficiency payments to FmHA.

The parties agree that the estate and FmHA have an interest in debtor's 1986 crop proceeds of $55,242.15 and that such proceeds constitute "cash collateral," as that term is defined in 11 U.S.C. § 363(a). The parties agree further that the debtor may not use, sell or lease cash collateral unless each entity having an interest in such cash collateral consents; or the court, after notice and a hearing, authorizes such use, sale, or lease. *See*, 11 U.S.C. § 363(c)(2). FmHA has not consented to the use of the aforementioned cash collateral; thus, the debtor can use, sell or lease the 1986 crop proceeds only upon this Court's authorization.

1. The term "custom" refers to services provided by one party, in this case the debtor, for the benefit of another party who typically owns the land or livestock, for a pre-determined fee. For example, custom trucking usually involves the owner of a truck providing transportation services to another using the owner's truck.

■ Section 363(e) of the Bankruptcy Code requires debtor to provide FmHA adequate protection of its interest, as follows:

(e) Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

The nature and extent of adequate protection which must be provided, in Chapter 12 cases, is governed by 11 U.S.C. § 1205. Section 1205(a) of the Bankruptcy Code specifies that 11 U.S.C. § 361 does not apply in Chapter 12 cases. The separate test for adequate protection in Chapter 12 cases eliminates the need of the family farmer to pay lost opportunity costs, and adds another means for providing adequate protection for farmland—paying reasonable market rent. Section 1205 eliminates the "indubitable equivalent" language of 11 U.S.C. § 361(3) and makes it clear that the value of the property, not the value of the creditor's "interest" in property, must be protected. See, *Joint Explanatory Statement of the Committee of Conference* to Bankruptcy Judges, United States Trustees, and Family Farmer Bankruptcy Act (Pub.L. 99–554). Here, the creditor's interest and value of the property are the same —$55,242.15.

Debtor asserts that its offer of adequate protection satisfies the requirements imposed by § 1205(b)(2) of the Code. Subsection (b)(2) requires the following protection:

(b) In a case under this chapter, when adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by— ...

(2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of property securing a claim or of an entity's ownership interest in property; ...

The terminology used in § 1205(b)(2) is identical to the wording of § 361(2). Accordingly, in considering an offer of adequate protection under § 1205(b)(2), a review of case authorities construing requests to use cash collateral by providing adequate protection under § 361(2) is appropriate.

■ The majority of the reported decisions, where debtors have proposed a replacement or additional lien on future crops or livestock as adequate protection of a creditor's interest in existing cash collateral, have concluded that the value to a creditor of a lien on an existing crop, or proceeds thereof, is greater than the promise of a lien on a crop to be grown. In *In re Berg*, 42 B.R. 335, 12 B.C.D. 523 (D.N.D. 1984), the district court reversed the bankruptcy court's authorization for debtors' use of cash collateral and ruled that the offer of a lien on a crop which has yet to be grown, plus an assignment of insurance proceeds under a contract to which the Commodity Credit Corporation is not a party, did not provide adequate protection against the loss of a lien on existing collateral. In a well-reasoned decision, the *Berg* court articulated the following reasoning:

It is the opinion of this court that an offer of a lien on a crop contemplated to be grown in 1984, plus an assignment of federal crop insurance proceeds is not adequate protection. The cases relied upon by the debtors as authority for the giving of a replacement lien all deal with existing collateral. In this case, rather than providing CCC [Commodity Credit Corporation] with collateral of a value that is indubitably equivalent to its interests in the stored grain, the debtors have provided a promise of collateral which may exist in the future. This is, in effect, an offer of no collateral at all. As pointed out at oral argument, the value to a creditor of a lien on an existing crop is greater than the promise of a lien on a crop to be grown. The creditor has the ability to inspect, protect and control existing grain in storage. Additionally, existing collateral is capable of being liquidated at any time, whereas a future crop must first be planted, grown and har-

vested. Likewise, it may be possible for others to file competing liens against the crop, for example seed, fuel or fertilizer liens, which may or may not have priority over CCC's liens.

42 B.R. at 338, 12 B.C.D. at 525. However, on the evidence before the Court, the debtor has established that the risks associated with farming have been minimized to a greater extent than was evidenced in the *Berg* case.

In *First Bank of Miller, Miller, S.D. v. Wieseler*, 45 B.R. 871, 12 B.C.D. 900 (D.S. D.1985), the district court reversed the bankruptcy court's order granting debtors' request to use cash collateral by replacing the creditor's lien on cash collateral with liens on anticipated crops and livestock yet to be planted or purchased. In ruling that collateral not yet in existence is not *per se* unsuitable as adequate protection, the district court concluded that the debtors failed to meet their burden of proving adequate protection under 11 U.S.C. § 363(e). Specifically, the debtors did not provide a satisfactory basis for their estimates on yield and market value of new crops, which was deemed critical to a proper assessment of whether prospective crops can adequately protect the creditor despite the uncertainties of farming. The *Wieseler* court expressed the following opinion on the offer of a lien on future crops:

> In most cases, a bare replacement lien in non-existent crops will not be enough protection to allow a debtor to proceed on a cash collateral motion. The debtor's

standard in cash collateral cases is a high one. To meet it, the debtors in the instant case must go beyond simply estimating what they hope they can harvest and what they hope the market will bring for it.

45 B.R. at 876, 12 B.C.D. at 904. Although the Court concurs with the rationale of the *Wieseler* decision, the Court finds that the factual setting of *Wieseler* is readily distinguishable from that of the instant case. In *Wieseler*, the only insurance offered by the debtors was their promise to exercise good husbandry and farming practices. The court found that the uncontrollable variables of debtors' business greatly diminished the value of their personal assurances. Here, debtor has introduced uncontroverted evidence that the granting of a replacement lien on 1987 crops together with the assignment of federal crop insurance and ASCS deficiency payments will result in the elimination of the risks attendant to his farming operation.[2]

The bankruptcy court, in *In re Berens*, 41 B.R. 524 (D.Minn.1984), held that the debtors offered adequate protection for the use of cash collateral to plant and harvest a 1984 crop on their home farm. The potential yields from the home farm showed a profit even if 1984 resulted in a poor crop year or crop yields were low. Additionally, the debtors' purchase of hail insurance appears to have been a significant factor in the court's approval of debtors' offer of adequate protection. *See also, In re Shee-*

2. This Court is certainly in agreement with the *Berg* and *Wieseler* decisions to the extent that such decisions reinforce the fundamental principle that a replacement lien upon yet-to-be-grown crops will not normally adequately protect a secured creditor whose cash collateral is sought to be used. Indeed, the Court notes that only in rare instances will such a replacement lien be deemed to provide adequate protection for a creditor secured in cash collateral. However, on the record made at hearing in *this case*, the Court believes that it is confronted with a situation in which the debtor has demonstrated, through essentially uncontroverted testimony, that he has effectively eliminated the normal risks associated with farming operations such that a replacement lien will adequately protect FmHA's interest. Here, debtor has asserted that he has eliminated all risks to FmHA by obtain-

ing a comprehensive crop insurance policy and by agreeing to assign ASCS deficiency payments to FmHA. While it strains credibility to accept debtor's assertion that crop insurance and assigned deficiency payments will completely remove all risk to FmHA in taking a replacement lien on future crops, FmHA has failed to controvert this assertion of the debtor. For example, FmHA did not adduce any evidence either directly or by cross-examination to establish that the federal crop insurance obtained by debtor was less comprehensive in its scope of coverage than the testimony of the debtor indicated. In addition, FmHA did not rebut the testimony of debtor that ASCS deficiency payments totally protected the debtor from losses due to crop price fluctuations. Absent such evidence, the Court is compelled to accept debtor's testimony at face value.

*han,* 38 B.R. 859, 11 B.C.D. 835 (Bankr.S. D.1984).

The evidence before the Court is not as comprehensive as the Court would prefer; however, the debtor has established that his 1987 crops, not yet planted or grown, are unencumbered; that he has spent to date the sum of $17,400 in preparation for planting his 1987 crops, including soil preparations; that he has purchased a "multi-peril" or "all-risk" crop insurance policy; that he is entitled to receipt of deficiency payments from the U.S. Government's ASCS program if market prices for his crops are less than a certain projection; that he has a projected profit cushion approximating $59,000, which is otherwise unencumbered; and that he is willing to grant FmHA a senior lien on 1987 crops and proceeds thereof and to pay FmHA with interest in October or November, 1987.

In short, FmHA's position is that the past is a prologue to the future. Because debtor's past projections were not met and his operating costs were high, FmHA chooses not to extend any additional operating loans or credit to the debtor. While FmHA has implied that debtor's farm operation was not well-managed, no credible or persuasive evidence was introduced on this issue, and the Court therefore is unable to determine whether debtor's allegedly poor profitability is the result of ever-increasing principal and interest payments due FmHA, or other factors.

While this Court believes that debtors must meet a very high standard in obtaining court authorization to use cash collateral, particularly in farm cases where the offered protection involves speculative collateral not yet in existence, the Court finds on the evidence presented in this case in support of debtor's motion—most of which was unrebutted—that adequate protection exists for the use of cash collateral in the sum of $55,242.15 under the following proposal:

1. Debtor shall provide FmHA a copy of his 1987 budget projections and all amendments thereto;

2. Debtor shall grant FmHA a senior lien on his 1987 crop, and crop proceeds, which crop is yet to be planted, grown or harvested;

3. Debtor shall not allow any other encumbrances to attach to his 1987 crop or crop proceeds without the written consent of FmHA or the Court;

4. Debtor shall pay FmHA a 4.5% rate of interest on any cash collateral used, and shall make such interest payments monthly, beginning in May, 1987, except to the extent money is not reasonably available to make such interest payments;

5. Debtor shall immediately provide FmHA and the Court with a copy and evidence of the multi-peril, all-risk crop insurance policy on 100% of the 1987 crop, shall maintain such policy until said crop is harvested and sold, and shall name FmHA as a beneficiary or loss-payee to the extent of $55,242.15, plus interest;

6. Debtor shall provide FmHA with a monthly operating report with respect to the use of cash collateral, income, expenses, and cash flow, and shall document the manner in which the cash collateral is used;

5. FmHA shall have the right to inspect debtor's premises and business records, as they concern the use of cash collateral, at reasonable times and upon reasonable notice to debtor and his attorney;

8. The cash collateral shall be deposited in an interest-bearing account at a chartered bank or savings and loan association, and its deposit shall be insured;

9. Debtor shall provide FmHA and the Court with evidence of its entitlement to ASCS deficiency payments and a description thereof.

IT IS SO ORDERED.